UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KATHRYN LLEWELLYN-JONES,**
**MARK LLEWELLYN-JONES,**
**CAROLINE JONES, PETER GREEN,**
**LESLEY GREEN, SAID FADEL a/k/a**
**SAEED FADHL, WARREN GROVER**,
and **MARGARET JOYCE GROVER**,                          Case No.

      Plaintiffs,                                          Hon.

v.                                                                 Magistrate

**METRO PROPERTY GROUP, LLC,** a            **JURY TRIAL DEMANDED**
Michigan limited liability company, **METRO**
**PROPERTY MANAGEMENT, LLC,** a
Michigan limited liability company, **GLOBAL**
**POWER EQUITIES, LLC,** a Michigan
limited liability company, **APEX EQUITIES,**
**LLC,** a Michigan limited liability company,
**SAMEER BEYDOUN**, **ALI BEYDOUN,**
**TAREK MAHMOUD BAYDOUN a/k/a**
**TAREK M. BAYDOUN a/k/a TAREK**
**BEYDOUN, BAYDOUN LAW GROUP,**
**PLLC,** a Michigan limited liability company,
d/b/a **THE MERIDIAN LAW GROUP**,
**MIKE ALAWEIH, DAVID MAKKI, CHRIS**
**PICCIURRO, KATHY MESSICS, GEORGE**
**VANDERBURG, ALLEN BROTHERS**
**ATTORNEYS AND COUNSELORS**
**PROFESSIONAL LIMITED LIABILITY**
**COMPANY,** a Michigan limited liability
company, **JAMES ALLEN,** and **JOHN ALLEN,**
jointly and severally,

      Defendants.
_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034

(248) 354-1409

_____/

## PLAINTIFFS' COMPLAINT

NOW COME Plaintiffs, KATHRYN LLEWELLYN-JONES, MARK LLEWELLYN-JONES, CAROLINE JONES, PETER GREEN, LESLEY GREEN, SAID FADEL a/k/a  SAEED FADHL**,** WARREN GROVER, and MARGARET JOYCE GROVER, by and through their attorney, DEBORAH K. SCHLUSSEL, and for their Complaint, state as follows:

## PARTIES - PLAINTIFFS

1.    Plaintiff Kathryn Llewellyn-Jones is a citizen of the United Kingdom.

2.    Plaintiff Mark Llewellyn-Jones is a citizen of the United Kingdom.

3.    Plaintiff Caroline Jones is a citizen of the United Kingdom.

4.    Plaintiff Peter Green is a citizen of the United Kingdom.

5.    Plaintiff Lesley Green is a citizen of the United Kingdom.

6.    Plaintiff Said Fadel a/k/a Saeed Fadhl is a citizen of the Republic of Yemen.

7.    Plaintiff Warren Grover is a citizen of Australia.

8.    Plaintiff Margaret Joyce Grover is a citizen of Australia.

9.    None of the Plaintiffs are lawfully admitted for permanent residence in the United States.

10.    Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover are collectively referred to herein as, the "Plaintiffs."

**PARTIES - DEFENDANTS**

11.     Defendant Metro Property Group, LLC is a Michigan limited liability company with its primary place of business in the City of Dearborn, County of Wayne, State of Michigan.

12.     Defendant Metro Property Management, LLC, is a Michigan limited liability company with it primary place of business in the City of Dearborn, County of Wayne, State of Michigan.

13.     Defendant Global Power Equities, LLC, is a Michigan limited liability company with its primary place of business in the City of Dearborn, County of Wayne, State of Michigan.

14.      Defendant Apex Equities, LLC, is a Michigan limited liability company with its primary place of business in the City of Dearborn, County of Wayne, State of Michigan.

15.      Defendant Sameer Beydoun is a citizen of the United States and a resident of the City of Dearborn, County of Wayne, State of Michigan.  He is a Member and Chief Executive Officer of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC

16.      Defendant Ali Beydoun is a citizen of the United States and a resident of the City of Dearborn, County of Wayne, State of Michigan.  He is the Chief Operating Officer and "Executive Director" of Defendant Metro Property Group, LLC, and upon information and belief, he is a Member of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC.

17.      Defendant Mike Alaweih is the Vice President of Construction Services for Defendant Metro Property Group, LLC, and a resident of the City of Inkster, County of Wayne, State of Michigan.  He is a Member of  Apex Equities, LLC.  Upon information and belief, he is

a Member of Defendants Metro Property Group, LLC, Metro Property Management, LLC, and Global Power Equities, LLC.

18.     Defendant David Makki is the Vice President of Real Estate Services for Defendant Metro Property Group, LLC, and a resident of the City of Dearborn, County of Wayne, State of Michigan.  Upon information and belief, he is a Member of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

19.     Defendant Chris Picciurro was, at all times relevant, Chief Financial Officer of Defendant Metro Property Group, LLC, and a resident of the Township of Harrison, County of Macomb, State of Michigan.

20.     Defendant Kathy Messics is the Client Care Director of Defendant Metro Property Group, LLC, and a resident of the City of Westland, County of Wayne, State of Michigan.

21.     Defendant George Vanderburg was, at all times relevant, Director of Tenant Relations of Defendant Metro Property Group and a resident of the City of Ferndale, County of Oakland, State of Michigan.

22.     Defendant Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun a/k/a is an attorney licensed in the State of Michigan and a resident of the City of Dearborn, County of Wayne, State of Michigan.  At all times relevant, Tarek M. Baydoun was the "General Counsel" for Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC.  At all times relevant, Tarek M. Baydoun was and, to date, remains "Of Counsel" to Defendant law firm, Allen Brothers, Attorneys and Counselors Professional Liability Company.  Although Tarek

4

Baydoun's name was removed from the website of Allen Brothers Attorneys and Counselors Professional Liability Company (also referred to herein as "Allen Brothers"), on or around October 2012, he continues to date to use Allen Brothers office, e-mail address, and other Allen Brothers resources and continues to maintain his "Of Counsel" relationship with that law firm. Tarek M. Baydoun is and was, at all times relevant, the sole Member of Defendant Baydoun Law Group, PLLC.  Defendant Tarek M. Baydoun is also currently listed as a practicing real estate agent for Huma, LLC doing business under the assumed name, "City Trends Realty."  Defendant Tarek M. Baydoun fraudulently represented himself as a political pollster who was retained, paid by, and frequently featured on WJBK-TV a/k/a FOX 2 News television in Detroit, which is owned and operated by FOX News Channel, a subsidiary of News Corporation.  Beydoun is also currently a candidate for the Dearborn City Council.

23.    Defendant Baydoun Law Group, PLLC, is a Michigan limited liability company with its primary place of business in the City of Detroit, County of Wayne, State of Michigan.  It does business under the assumed name of The Meridian Law Group.

24.    Defendant Allen Brothers Attorneys and Counselors Professional Liability Company (hereinafter referred to as "Allen Brothers") is a Michigan limited liability company with a registered office located in the City of Detroit, County of Wayne, State of Michigan.  At all times relevant, Defendants Tarek M. Baydoun and Defendant Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group was and, to date, remains "Of Counsel" to Allen Brothers Attorneys and Counselors Professional Liability Company.

25.    Defendant James Allen is and was at all times relevant a Member of Defendant

Allen Brothers Attorneys and Counselors Professional Liability Company, and a citizen of the State of Michigan.  Upon information and belief, he is a resident of the Eastern District of the State of Michigan, Southern Division.

26.    Defendant John Allen is and was at all times relevant a Member of Defendant Allen Brothers Attorneys and Counselors Professional Liability Company, and a citizen of the State of Michigan.  Upon information and belief, he is a resident of the Eastern District of the State of Michigan, Southern Division.

27.    Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, and Tarek M. Baydoun are collectively referred to herein as "Ponzi Scheme Defendants."

28.     All of Defendants are collectively referred to herein as the "Defendants," and Defendants Tarek M. Baydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, John Allen, James Allen, Defendant Allen Brothers Attorneys and Counselors Professional Liability Company are collectively referred to herein as the "Attorney Defendants."

## JURISDICTION AND VENUE

29.    The amount in controversy exceeds the sum or value of $75,000 (Seventy-Five Thousand Dollars), exclusive of interest or costs.  All of the Plaintiffs are citizens or subjects of foreign states, and all of the Defendants are citizens of Michigan and Michigan limited liability companies incorporated in the State of Michigan.  Therefore, there is complete diversity of citizenship, pursuant to 28 U.S.C. Section 1332(a)(2) and 28 U.S.C. 1332(c)(1).

30.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C.

Section 1391 because all Defendants reside within this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

## COMMON FACTUAL ALLEGATIONS

31.     Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

32.     This lawsuit concerns breach of oral and implied contract, unjust enrichment, fraud, misrepresentation, conversion—both common law and statutory, and other causes of action committed by Defendants and their employees, agents, and representatives. Plaintiffs sustained several hundred thousand dollars to over a million dollars in damages as a result of Defendants' conduct and that of their employees, agents and representatives.

## THE "PONZI" SCHEME

33.     The conduct in which Defendants engaged against Plaintiffs is not only fraudulent but characteristic of what is commonly known as a "Ponzi scheme," and, in fact, Defendants have engaged in the same fraud and schemes detailed herein against many other similarly situated parties, spanning the globe, encompassing multi-millions of dollars, and reaching mini-Madoff proportions.  In most cases, the parties cheated and defrauded by Defendants, including Plaintiffs, have been defrauded of virtually their entire retirement funds and/or pensions by Defendants.  Ponzi Scheme Defendants recently partnered with an Irish investment consortium, Brendan Investments Property Management (hereinafter, referred to as "Brendan") to form a company called, "Woodward Capital," with Brendan reportedly giving Ponzi Scheme Defendants an infusion of 15 (fifteen) million Euros, enabling Ponzi Scheme Defendants to

further engage in the massive Ponzi scheme fraud.  Ponzi Scheme Defendants Sameer Beydoun and Ali Beydoun, as well as one of their employees are listed on the Woodward Capital website as part of the Woodward Capital "team" for real estate investments in Detroit, attached as "Exhibit A."  *Exhibit A.*

34.     Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih, doing business as Defendants, Metro Property Group, Apex Global Properties, LLC, and Global Power Equities, LLC, purchase extremely rundown, rarely tenanted, usually uninhabitable properties out of foreclosure from the City of Detroit, and they are, upon information and belief, the single largest purchaser of such foreclosed Detroit homes.  Upon information and belief, Ponzi Scheme Defendants have purchased thousands of such homes for between $500.00 (five-hundred dollars) and $5,000.00 (five-thousand dollars) and/or similar small amounts.  (Ponzi Scheme Defendants purchase a scant few homes for larger amounts.)  They make a profit by duping and defrauding investors, including Plaintiffs, into buying them for $40,000.00 (forty-thousand dollars) to $50,000.00 (fifty-thousand dollars) and/or similar amounts.

35.     Defendants know that the homes, even if they are refurbished at a cost of thousands of tens of thousands of dollars (which is not the case with any of the homes that Ponzi Scheme Defendants sold to Plaintiffs), will be unlikely to rent out to third parties because of their mostly undesirable and destitute locations, and that, even if the homes do rent out to third parties, the prevailing average amounts of rents in the areas in which the homes are located are so low that they will not cover the cost of repairs and the prices at which they sell the homes to third parties, including Plaintiffs.

36.     Ponzi Scheme Defendants do not refurbish the homes nor make any attempt to bring them up to code requirements for a certificate or occupancy, much less Section 8

requirements for habitability, despite fraudulent guarantees otherwise to Plaintiffs and other home buyers whom Defendants cheated, deceived, and defrauded into purchasing the homes. Defendant Mike Alaweih, the "Construction Project Manager" for Ponzi Scheme Defendants is responsible for refurbishment and repairs to the homes.  He knowingly and deliberately never refurbished and/or repaired any of Plaintiffs' homes, causing them to be fined thousands of dollars and forcing them to pay thousands of dollars for repairs to the properties they purchased from Ponzi Scheme Defendants.  Even if the homes were refurbished, they are generally not tenanted and difficult to find tenants for.

37.     Ponzi Scheme Defendants then market the homes to third parties—primarily foreign investors and retirees in foreign countries, including Plaintiffs, who are unable and/or unlikely to make the overseas trip to visit Detroit to actually view the properties prior to purchasing them.  On the few occasions that said foreign investors actually visit Detroit, Ponzi Scheme Defendants have shown the foreign investors, including Plaintiffs, properties that have been indeed refurbished, but which are a ruse and staged fraud for the bait-and-switch sales of houses to the investors.  In the few occasions that said foreign investors (including Plaintiffs) have visited Detroit after the purchase of said homes, Ponzi Scheme Defendants have given them all kinds of excuses for not showing them the insides of the properties and/or introducing them to the alleged tenants allegedly living in the properties, even after the parties, including Plaintiffs, have already been defrauded and duped into purchasing the properties.  This is so that fraud and Ponzi Scheme can be continued undetected as long as possible.  Ponzi Scheme Defendants also sent Plaintiffs, in some cases, fraudulent photos, which they claimed were the insides of the homes, but in many cases said photos were not, in fact, from the insides of the homes from which the photos were purported to be.  In fact, Ponzi Scheme Defendants, in the few cases in

9

which tenants actually rent and live in the homes and request repairs, never make those repairs as is Ponzi Scheme Defendants' duty in managing the homes.  By virtue of this, Ponzi Scheme Defendants have turned Plaintiffs into unwitting and unintentional "slumlords."

38.    Ponzi Scheme Defendants fraudulently market the homes to these overseas buyers, including Plaintiffs, as refurbished, **already "tenanted,"** and up to Section 8 requirements.  In many cases, Ponzi Scheme Defendants fraudulently market the homes as "Section 8 approved" and tenanted with "Section 8 tenants."  Defendants falsely guarantee the buyers, including Plaintiffs, verbally and in writing (including in marketing materials, brochures, residential listings, videos, and website materials) that the homes are "turnkey properties," meaning that they are immediately readily habitable when the key is turned to open the door and that they were already tenanted.  Ponzi Scheme Defendants tell prospective buyers, including Plaintiffs that the homes provide immediate cash flow and describe the tenants who are allegedly already renting the properties, providing potential buyers (including Plaintiffs) with the renters' financial information and family status (all of which is fabricated, fictional, and fraudulent).  In support of this scheme, Ponzi Scheme Defendants hired former Detroit News and Detroit Free Press reporter, Darci McConnell and her McConnell Communications, to market Ponzi Scheme Defendants, specifically Defendant Sameer Beydoun, as the "savior" of Detroit in gushing, glowing feature articles in the Detroit Free Press, Bloomberg News, and other local, national, and international publications of note, furthering the Ponzi scheme and providing Ponzi Scheme Defendants with convincing mainstream media approval and cover for the Ponzi scheme fraud. In each of these cases, reporters did not speak to purchasers who were swindled and conned by Ponzi Scheme Defendants into purchasing the fraudulently marketed homes, nor did they view the shabby insides of the homes.  In one case, the Detroit Free Press merely reprinted the

"before" and "after" photos provided by Ponzi Scheme Defendants, without fact-checking their veracity.

39.     Ponzi Scheme Defendants, after selling the properties to the buyers, including Plaintiffs, whom they have defrauded and fooled, then purport to manage, repair, and do evictions for the properties when necessary.  But the repairs are never done and fraudulent evictions of non-existent, fictional tenants are "conducted," with Defendants billing the duped home buyers, including Plaintiffs, with reports and billings for fraudulent "management" and evictions, as well as fraudulent eviction documents and/or genuine eviction documents of non-existent tenants that Defendants know are non-existent.  In some cases, Ponzi Scheme Defendants have also charged homeowners, including Plaintiffs, hundreds to thousands of dollars for "repairs" that should have already been done prior to the sale, since the homes were marketed as habitable and up to code.  In some cases Ponzi Scheme Defendants send homeowners fraudulent, fabricated Section 8 contracts.

40.     In at least one instance, when a home owner, including one of Plaintiffs, who bought the home from Ponzi Scheme Defendants--and for whom Defendants are supposed to manage the home--has asked questions or challenged the charade of legal machinations, Ponzi Scheme Defendants' then-in-house attorney, Defendant Tarek M. Baydoun, a Member of the State Bar of Michigan, threatened the home owner with criminal proceedings and up to 25 (Twenty-Five) years in prison, citing his (Tarek M. Baydoun's) alleged "experience" as an intern at the Wayne County Prosecutor's office, in a letter attached as "Exhibit B."  Defendant Tarek M. Baydoun fraudulently engaged in the pretense of "evicting" the non-existent tenant from the property.  Defendant Tarek M. Baydoun also repeatedly "evicted" the paying tenant (who was different from the tenant on the lease presented to Plaintiffs) as a "trespasser"—whom he knew

was not a trespasser—in order to cover his and Ponzi Scheme Defendants' tracks to jibe with the fraudulent leases they presented to Plaintiffs for the properties and to cover up the fact that the actual tenants were paying much lower rents than were represented in the fraudulent leases. Defendant Tarek M. Baydoun also knowingly participated in the marketing and selling "Ponzi" scheme to prospective buyers/"investors" in such locations as New York and appears on video at one such marketing session, laughing it up with the other Ponzi Scheme Defendants, as they attempted to defraud other potential investors.  On several occasions, Plaintiffs contacted Defendant Tarek M. Baydoun regarding his fraudulent evictions and legal fees, demanding details and documents.  He neither responded nor provided the documents and answers because there were neither any legitimate documents for legitimate evictions, and there were no legitimate answers to Plaintiffs' questions regarding his actions.

41.     The scheme works initially because, along with the fake leases to non-existent tenants that Ponzi Scheme Defendants present to home buyers, including Plaintiffs, Ponzi Scheme Defendants typically pay a higher-than-normal purported "rent" to the home buyers, including Plaintiffs, for several months, claiming that this is the rent collected from the tenant of the property in question, when in actuality, there is no tenant at all or there is a different tenant than the one named on the fraudulent lease, and the actual tenant is paying a much lesser amount in rent.  Then, after several months, Ponzi Scheme Defendants tell the homeowners, including Plaintiffs, that the tenant stopped paying rent and had to be evicted or that the tenant moved out and that, therefore, no further rent will be forthcoming until a new tenant is found.  In most cases, as is the case with Plaintiffs, Ponzi Scheme Defendants never seeks a new tenant, and the property is not only worthless, but a money pit and drain on resources.  Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Kathy Messics supply fraudulent, forged lease

documents for non-existent tenants to prospective buyers and current homeowners to whom they've sold the homes and now manage them. The fraudulent lease documents are forged by Defendants Sameer Beydoun, Kathy Messics, and George Vanderburg. Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Kathy Messics all routinely commit fraud, by lying about tenants and the condition of properties. Defendant Chris Picciurro routinely supplied false information regarding rental payments and amounts.

42. When the homeowners, including Plaintiffs, look into the matter, the homeowners often discover the actual situation—that the home is in severe disrepair and/or never had a tenant. Or in some cases, as has been the case with some of the Plaintiffs in the instant action, the home had a tenant who is other than that named on the lease and is paying far less than what has been represented on the fraudulent leases presented to the homeowner by Ponzi Scheme Defendants prior to the homeowner purchasing the home from Ponzi Scheme Defendants. That is in the cases in which Ponzi Scheme Defendants actually finally provided a lease to the Plaintiffs, because Ponzi Scheme Defendants generally refused and never presented leases to the homeowners. Not supplying leases is standard for Ponzi Scheme Defendants. They are promised repeatedly but never materialize. Most of the Plaintiffs in the instant action only received (fraudulent) copies of the leases because Plaintiff Kathryn Llewellyn-Jones directly challenged them about the rents.

43. Ponzi Scheme Defendants represented the homes, including those they defrauded Plaintiffs into buying from Ponzi Scheme Defendants, as Section 8 approved, but in almost all cases, a Section 8 audit was never done for the home and a Section 8 contract had never been entered into because the home would not pass a Section 8 audit. In some cases, after the homeowner, including Plaintiffs, demanded to see the Section 8 audit/Section 8 contract, a

Section 8 audit/Section 8 contract form was post-dated and apparently fraudulent. In other cases, Plaintiffs were fined thousands of dollars by authorities for failing Section 8 requirements. In at least one case, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were fined Five-Thousand Seven-Hundred Sixty-One Dollars and Eighty Cents ($5,761.80) because of Ponzi Scheme Defendants Section 8 fraud.

44. Plaintiffs were purchasers of homes in the City of Detroit, County of Wayne, State of Michigan. The homes were purchased from Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih, doing business as Defendants, Metro Property Group, LLC, Metro Property Management, LLC, Apex Global Properties, LLC, and Global Power Equities, LLC. Defendants Tarek M. Baydoun, Chris Picciurro, Kathy Messics, and George Vanderburg conspired with them in the fraudulent home sales, "management," and "legal work/evictions" in order to carry out the Ponzi scheme fraud and keep it going for as long as possible.

45. Plaintiffs were fraudulently induced by Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih, doing business as Defendants Metro Property Group, LLC Metro Property Management, LLC, Apex Global Properties, LLC, and Global Power Equities, LLC into the purchase of said homes with promises and guarantees—both verbal and written—that the homes were entirely habitable, completely refurbished, "turnkey" properties, which met "Section Eight" requirements for federal government sanctioned housing pursuant to 42 U.S.C. § 1437 *et seq*. per "Section Eight audits," when in almost all cases, the homes were in complete or major disrepair, not refurbished, barely habitable or completely uninhabitable, not up to the minimum required standards for Section Eight housing, and not subject to Section Eight audits.

46. In several cases, Ponzi Scheme Defendants further defrauded Plaintiffs by

informing them that the homes were occupied by tenants who were paying a specific amount of rent, showing Plaintiffs fraudulent leases for fictional tenants paying a fictional amount of rent. The leases were forged, and said tenants and said corresponding rent listed on the leases did not exist.  The signature of Defendant Sameer Beydoun appears on the fraudulent leases.  On several documents signatures also appear to be forgeries signed by Defendant George Vanderburg. Further, the forged, alleged signatures of non-existent tenants on some of the fraudulent leases seem to match the signature of Defendant George Vanderburg.  See attached signatures of George Vanderburg, at "Exhibit C" and the forged lease signatures at "Exhibit D."  *Exhibits C and D*.  Upon information and belief, Defendants George Vanderburg and Kathy Messics and/or other Ponzi Scheme Defendants and/or their employees forged tenants' signatures on the fraudulent leases at the direction of Defendant Sameer Beydoun and/or he knew or should have known of the forgeries.

47.    In several cases, Ponzi Scheme Defendants also showed plaintiffs post-dated, fraudulent Section 8 audits/Section 8 contracts, showing the homes were up to Section 8 standards and requirements when that was not the case.  Again, in at least one case, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were fined Five-Thousand Seven-Hundred Sixty-One Dollars and Eighty Cents ($5,761.80) because of Ponzi Scheme Defendants Section 8 fraud.

48.    When Plaintiffs finally caught on to the fraudulent scheme detailed herein, Ponzi Scheme Defendants continued to lie to Plaintiffs in order to attempt to cover up the fraudulent scheme and keep it going.

49.    For instance, when Plaintiff Kathryn Llewellyn-Jones discovered that Ponzi

Scheme Defendants were advertising lower rents—than those specified in the fraudulent leases provided to Plaintiffs by Ponzi Scheme Defendants—in an online listing for several of the properties that she and other Plaintiffs purchased, Plaintiff Kathryn Llewellyn-Jones questioned Defendants Ali Baydoun and Kathy Messics about those listings and significantly lower rents. Defendants Ali Baydoun and Kathy Messics lied to Plaintiff Kathryn Llewellyn-Jones, claiming that the rental listings she found were incorrect and not those of Defendant Metro Property Group, LLC and Defendant Metro Property Management, LLC.  In fact, the listings were those of Defendant Metro Property Group, LLC and Defendant Metro Property Management, LLC. This was the case not only for properties purchased by Plaintiffs, but also for other properties which Ponzi Scheme Defendants offered Plaintiffs for sale.

50.    With regard to the listings and other fraud perpetrated by Ponzi Scheme Defendants, Defendant Kathy Messics accidentally copied one of Plaintiffs on an e-mail message she sent to Defendant Ali  Baydoun, attached as "Exhibit E," in which she discussed the lies Messics, Ali Baydoun, and the rest of the Ponzi Scheme Defendants told Plaintiffs to cover up their fraudulent scheme and told Ali Baydoun they would have to come up with a better set of lies. *Exhibit E.*

51.    Pursuant to Michigan case law, Members/officers of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, can be held personally liable for their tortious behavior which harmed Plaintiffs.

## **THE CO-CONSPIRACY OF DEFENDANTS' ATTORNEYS**

52.    Defendant Tarek M. Baydoun was the "in-house" General Counsel of Defendants

Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, at the same time that he was "Of Counsel" to Defendant Allen Brothers.

53.     Defendant Tarek M. Baydoun not only participated in and conspired with the other Ponzi Scheme Defendants in the fraudulent schemes detailed herein, but he also repeatedly billed several of Plaintiffs for fraudulent evictions of non-existent/fictional tenants from Plaintiffs' properties and evictions of non-existent "trespassers" in order to cover his and Ponzi Scheme Defendants' tracks.  Further, Defendant Tarek M. Baydoun, in addition to threatening Plaintiffs, as detailed herein, with criminal prosecution when they asked him questions regarding the fraudulent evictions for which he billed them, also ignored their e-mail messages to him, deliberately ignoring their repeated inquiries, and violating several "Rules of Professional Responsibility" governing his conduct as an attorney and member of the State Bar of Michigan.

54.     At all times relevant, Tarek M. Baydoun, the in-house General Counsel for Ponzi Scheme Defendants maintained an "Of Counsel" relationship with Defendant Allen Brothers and its Members, Defendants James Allen and John Allen, and at all times relevant and to date, Tarek M. Baydoun and Defendant Baydoun Law Group, PLLC d/b/a The Meridian Law Group (of which Tarek M. Baydoun is the only Member) was housed in and utilized the offices and resources of Defendant Allen Brothers and its Members, Defendants James Allen and John Allen.  At all times relevant, Defendants Allen Brothers, James Allen, and John Allen were aware or should have been aware that their "Of Counsel" attorney, Tarek M. Baydoun, was engaged in illegal and fraudulent behavior, including the phony and fraudulent evictions and the threats of criminal prosecution of the Plaintiffs who asked questions regarding those fake evictions and the other fraud perpetrated by Ponzi Scheme Defendants.  At all time relevant,

Defendants Allen Brothers, James Allen, and John Allen were aware or should have been aware that their "Of Counsel" attorney, Tarek M. Baydoun, was using Allen Brothers resources, including e-mail, to perpetrate the fraud in which he was engaged.

55.     Yet, Defendant James Allen continued where Defendant Tarek M. Baydoun left off, sending threatening messages to Plaintiffs and attempted to further cover up the Ponzi Scheme fraud, knowing full well that the limited liability company law firm in which he is a Member bears full responsibility and is liable for the actions of Defendant Tarek M. Baydoun. Further, because of Defendant Tarek M. Baydoun's fraudulent and illegal acts as described herein, Defendants James Allen, John Allen, and Allen Brothers attempted to conceal Defendant Tarek M. Baydoun's continuing relationship with them by removing his name from Defendant Allen Brothers' website on or about October 1, 2012.  Despite that, Defendants Tarek M. Baydoun and Defendant Baydoun Law Group, PLLC d/b/a The Meridian Law Group continue to be located within the offices of Defendants James Allen, John Allen, and Allen Brothers, to utilize their resources, including an e-mail address from the Defendant Allen Brothers firm, and to maintain and "Of Counsel" relationship with Defendant Allen Brothers.  Further, Defendant Tarek M. Baydoun continues to regularly write, to date, in the Arab American News on behalf of Defendant Allen Brothers.

56.     Lawyers and law firms engaged in "Of Counsel" affiliations are treated as one law firm.  But even if they were not—and even if Defendant Tarek M. Baydoun hadn't used Allen Brothers resources to engage in the various frauds detailed herein, it became clear from Defendant James Allen's actions on behalf of himself and Allen Brothers that he was acting in concert with Tarek Baydoun in the conspiracy and the attempted cover up of Tarek Baydoun's fraudulent activity and furtherance of the Ponzi Scheme fraud.

57.     Pursuant to Michigan case law, Defendant Allen Brothers' Members/officers can be held personally liable for their tortious behavior which harmed Plaintiffs.

58.     Pursuant to Michigan case law, Defendant Tarek M. Baydoun, the Member/officer of Defendant Baydoun Law Group, PLLC, doing business as The Meridian Law Group, can be held personally liable for his tortious behavior which harmed Plaintiffs.

## THE HEZBOLLAH CONNECTION

59.      Defendant Tarek M. Baydoun has openly praised and defended Hezbollah, the Iran-backed Lebanese Islamic terrorist group which is on the United States State Department Terrorist List and has been named as a "Specially Designated Global Terrorist Entity" by the United States Department of Treasury.  Hezbollah murdered more than 300 United States Marines and Embassy officials, hijacked TWA Flight 847 on which it trampled to death American Navy Diver Robert Dean Stethem, kidnapped and tortured to death Beirut CIA Station Chief William Buckley and U.S. Marine and United Nations Peacekeeper Col. William R. "Rich" Higgins, conspired with Al-Qaeda in the Khobar Towers bombing targeting Americans, and provided explosives used  by Al-Qaeda terrorists against American soldiers in Iraq.

60.     In 2007, Defendant Tarek M. Baydoun, the FOX News-paid "pollster" for its Detroit news affiliate, "FOX 2 News," was an employee of Al-Mabarat Charitable Organization, a Dearborn, Michigan charity which is the United States affiliate of Lebanon-based Hezbollah charity, Al-Mabarrat, when the charity was raided by the Federal Bureau of Investigation (FBI) for allegedly sending money to Hezbollah.  On the Facebook social media website, Defendant Tarek M. Baydoun has repeatedly promoted the Lebanon-based Hezbollah charity, Al-Mabarrat,

and he asked his Facebook friends and followers to donate to the charity for his 25th birthday. *Exhibit F*.

61.     Defendants Tarek M. Baydoun, Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih are all from families that are well known to be prominent supporters and members of Hezbollah in South Lebanon.  Upon information and belief, Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih are also supporters of Hezbollah and have property and/or homes in Hezbollah strongholds in South Lebanon.  Defendants Sameer Beydoun, Ali Beydoun, David Makki, and Mike Alaweih hired Defendant Tarek M. Baydoun as their attorney and in-house counsel despite and likely because of their knowledge that Defendant Tarek M. Baydoun was an open supporter of Hezbollah and helped raise money for its alleged United States affiliate, which was raided by the FBI.

62.     Given several of Defendants' ties to Hezbollah, Plaintiffs fear that the money from which they (and other similarly defrauded parties) have been defrauded by Defendants may have, in part, been laundered to Hezbollah.

## THE PROPERTIES

### The 16527 Griggs House

63.     Ponzi Scheme Defendants marketed a home located at 16527 Griggs Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, using a document entitled, "Property Information," created by Defendant Metro Property Group, attached as "Exhibit G."

64.     The Property Information document stated that the home at this address is

"Currently rented to a pre-screened, up to date tenant for $900 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $10,800," "Net annual rent roll [of] **$7,820**," and "Net Yield = **17.4%**." *Exhibit G*.

65.    The Property Information document for this home noted eight (8) significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants. *Exhibit G*.

66.    Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which specified a rent of Nine Hundred Dollars ($900.00) (and they were later presented with a copy of said lease, which turned out to be fraudulent and forged).

67.    Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was "Section 8 approved" and that the tenant was living there pursuant to said "Section 8 approval."

68.    Based on the documents and information presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones purchased the 16527 Griggs Street Property from Defendant Global Power Equities, LLC on June 15, 2011 for a purchase price of Forty-Two-Thousand Five-Hundred Dollars ($42,500.00).  On that same date, June 20, 2011 and as part of the closing on the property, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit H."

69.    Thereafter, in August 2011, Plaintiff Kathryn Llewellyn-Jones, while

doing an Internet search, discovered a rental list, attached as "Exhibit I," belonging to Defendant Metro Property Group, which advertised the 16527 Griggs Street Property as available for rent at Eight-Hundred Dollars ($800.00), even though Ponzi Scheme Defendants informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was already rented out to a tenant for Nine-Hundred Dollars ($900.00). *Exhibit I.*

70.     In fact, as Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned, the lease they had been told about—and later shown, only as a direct result of Plaintiff Kathryn Llewellyn-Jones' repeated questions and challenges to repeated lies Ponzi Scheme Defendants told her—was fictional, fraudulent, and a forgery, and there was, in fact, no tenant renting or living in the property, which is why there was a listing seeking a tenant to pay a lesser amount than that which was specified on the marketing materials and the lease for the property that was presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones to induce them to purchase the property from Ponzi Scheme Defendants.

71.     When Plaintiff Kathryn Llewellyn-Jones discovered the list of rental properties available for rent, which included the 16527 Griggs Street home, she immediately contacted Defendant Ali Beydoun to inquire about this stark discrepancy which did not jibe with the signed lease she had been told about—but never given or shown—prior to purchasing the property. (The forged lease was finally presented to her, only after she repeatedly caught Ponzi Scheme Defendants in lies regarding rental amounts.)

72.     Defendant Ali Beydoun lied to her and told her that the list she found was not a Metro Property Group list and belonged to "another agent" over whom he and the other Ponzi Scheme Defendants had "no control."  Plaintiffs learned that this fraudulent statement is Defendant Ali Beydoun's habitual response to the many victims of Ponzi Scheme Defendants'

scam, once the victims see rental listings for properties they've purchased from Ponzi Scheme Defendants with the inducement of a fraudulent, forged lease from a fictional tenant for a fictional, higher amount of rent.  Plaintiffs later learned that, in fact, the list they discovered was in fact an actual rental list created and posted by Ponzi Scheme Defendants, including Defendant Ali Beydoun.

73.    Defendant Ali Beydoun further defrauded Plaintiff Kathryn Llewellyn-Jones, telling her that he did not know why the properties were being advertised at the lower rents, but that he had the signed lease in front of him for the property located at 16527 Griggs Street for a rental rate of Nine-Hundred Dollars ($900.00) per month and that the tenant had moved in on May 1, 2011.

74.    After Defendant Ali Beydoun sent this false and fraudulent response to Plaintiff Kathryn Llewellyn-Jones, Defendant Kathy Messics, the Client Care Director of Defendant Metro Property Group, LLC, accidentally sent Plaintiff Kathryn Llewellyn-Jones an e-mail message addressed to Defendant Ali Beydoun telling him that Plaintiff Kathryn Llewellyn-Jones had not been fooled by his fraudulent explanations of the rental listing and the tenant on the property and that she (Defendant Kathy Messics) and Defendant Ali Beydoun needed to make up a more credible fraudulent story to further cover up the ongoing Ponzi Scheme.  In the e-mail message, Defendant Kathy Messics also indicated that there was no lease for this property.  The e-mail message is attached as "Exhibit E."

75.    Although Ponzi Scheme Defendants repeatedly told Plaintiff Kathryn Llewellyn-Jones about and presented her with information regarding an alleged signed lease for the property for a tenant who was allegedly already occupying the premises and paying a rent of Nine-Hundred Dollars ($900.00), Ponzi Scheme Defendants repeatedly failed to present Plaintiff

Kathryn Llewellyn-Jones with a copy of said lease, despite her repeated requests for a copy of said lease.

76.     When Defendant Kathy Messics finally sent the lease for the 16527 Griggs property to Plaintiff Kathryn Llewellyn-Jones, she sent her a lease dated May 1, 2011, and signed by Defendant Sameer Beydoun and a tenant, named, Paula Sinclair, attached as "Exhibit J." The lease indicated a monthly rental rate of Nine-Hundred Dollars ($900.00). Defendant Kathy Messics also informed Plaintiff Kathryn Llewellyn-Jones that a security deposit equivalent to one month's rent (or Nine-Hundred Dollars ($900.00)) had been paid by the tenant. Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned that this lease was fraudulent, fictional, and forged, and that it was a pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi Scheme. Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also later discovered that, in fact, at the time, there was no tenant living in the property or paying rent. Instead, Ponzi Scheme Defendants were paying Plaintiffs the Nine-Hundred Dollar ($900.00) rent out of the funds that Plaintiffs paid for the home in the first place.

77.     In June 2012, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones received a rental statement for May 2012, showing a payment of only Seven-Hundred-Fifty Dollars ($750.00) for the 16527 Griggs property, One-Hundred-Fifty Dollars ($150.00) below the rental rate on the lease for the property.

78.     When Plaintiff Kathryn Llewellyn-Jones inquired about the drop in rent, Ponzi Scheme Defendants informed them that the Section 8 Allowance for the 16527 Griggs Property dropped to Seven-Hundred-Fifty Dollars ($750.00). This was yet another falsehood propagated by Ponzi Scheme Defendants to keep their Ponzi Scheme going and to continue to defraud Plaintiffs.

79.     Thereafter, Plaintiff Kathryn Llewellyn-Jones requested a copy of the Housing Assistance Payments contract (hereinafter, referred to as the "HAP")—the contract with the United States Department of Housing and Urban Development, which is required for all Section 8 tenant-based assistance—for this property from Defendant David Makki, the Vice President of Real Estate Services for Defendant Metro Property Group, LLC.  Her request is attached as, "Exhibit K."  In response, Defendant David Makki sent Plaintiff Kathryn Llewellyn-Jones only a partial HAP document, attached as "Exhibit L," and, despite several requests, he refused to provide Plaintiff Kathryn Llewellyn-Jones with the full HAP document, stating that this was "impossible."

80.     The portion of the HAP lease which Defendant David Makki sent Plaintiff Kathryn Llewellyn-Jones begins on November 28, 2011, far later than the fraudulent lease Ponzi Scheme Defendants sent Plaintiff Kathryn Llewellyn-Jones for this property.  The fraudulent lease begins on May 1, 2011.   The portion of the HAP lease which Defendant David Makki sent Plaintiff Kathryn Llewellyn-Jones shows only a rent of Seven-Hundred Fifty Dollars ($750) per month, not the rent of  Nine-Hundred Dollars ($900.00), as specified on the fraudulent lease provided to Plaintiff Kathryn Llewellyn-Jones by Ponzi Scheme Defendants.  Exhibit M.

81.     An e-mail message which Defendant David Makki sent Plaintiff Kathryn Llewellyn-Jones with the partial HAP lease contained a new fraudulent story in an attempt to explain away the lower rent, attached as "Exhibit N."  Makki claimed that the tenant was making a One-Hundred Fifty ($150.00) per month contribution to the rent and had been told she was no longer allowed to do so or she would lose all of her Section 8 funding.  Makki also tried to convince Plaintiff Kathryn Llewellyn-Jones not to pursue this matter by trying to evict the tenant and told Plaintiff Kathryn Llewellyn-Jones how much money she made on the property (when in

fact she did not make money from the property, and the money she had made to that point was a fraudulent Ponzi scheme concocted by Ponzi Scheme Defendants paid out of Plaintiff Kathryn Llewellyn-Jones' own payment for the home).  This was a deliberate attempt to mislead Plaintiff Kathryn Llewellyn-Jones and stop her from making any further inquiries to discover the entire fraudulent scheme that was actually being perpetrated by Ponzi Scheme Defendants with this property and others.

82.     Plaintiff Kathryn Llewellyn-Jones asked an independent third party to contact the tenant of this property directly to learn the truth.  The tenant, Paula Sinclair, stated that she had reserved the property in August 2011, which directly contravenes the fraudulent May 2011 lease which Ponzi Scheme Defendants provided Plaintiff Kathryn Llewellyn-Jones.  The tenant also stated that she did not move in and actually begin renting the property until the end of November 2011, as necessary repair work to the home had not been done by Ponzi Scheme Defendants. The tenant stated that, even when she moved in, the home was not habitable, the repairs had not been completed, and a boiler was only fitted and installed after she moved into the property.  She also stated that the rent for the property had always been Seven-Hundred Fifty Dollars ($750.00), and she had never contributed One-Hundred Fifty Dollars ($150.00) or been ordered to stop paying a contribution (she pays only Seventy Dollars ($70.00) per month toward the rent, and that is all she has ever paid).  She produced her actual lease, attached as "Exhibit O," which is also signed by Defendant Sameer Beydoun, just as he signed the forged lease dated May 1, 2011. Thus, the Nine-Hundred Dollar ($900.00) per month rent paid to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones for this property until June 2012, was fraudulent and, in fact, despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, there

was never a tenant of the property who paid Nine-Hundred Dollars ($900.00) per month rent. Clearly, the phony rent payments were made at the beginning in order to fool Plaintiffs into believing that the house was habitable, tenanted, and earning a high monthly return.  See Affidavit of Paula Sinclair, attached as "Exhibit P."

83.     Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also discovered that the property was not up to Section 8 standards, and, therefore, the rental payments were held in abatement, so even after the tenant moved in, no actual rent was coming in to Ponzi Scheme Defendants at all, with the rent being paid to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones consisting of Ponzi Scheme payments paid out of the inflated price for the property, which Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were defrauded into paying Ponzi Scheme Defendants in the first place.

84.     Thereafter, Plaintiff Kathryn Llewellyn-Jones repeatedly sent e-mail messages to Defendant David Makki asking for proof that the Section 8 program had banned the tenant from making contributions to the rent.  He never provided any such proof, and instead, finally e-mailed Plaintiff Kathryn Llewellyn-Jones responses containing excuses and angry personal attacks and new, changed fraudulent stories, lies, and excuses, because no such proof actually existed and he wished to continue the Ponzi Scheme fraud, which was clearly being uncovered by Plaintiff Kathryn Llewellyn-Jones.  The e-mail exchanges are attached as "Exhibit Q."

85.     Because the property was never refurbished, contrary to Ponzi Scheme Defendants' fraudulent representations, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were cited on August 27, 2012 by the Section 8 Housing Choice Voucher Program for Thirteen (13) significant deficiencies on the property.  See "Section 8 Housing Choice Voucher Program Owner Notification of Housing Quality Standards (HQS) Inspection," attached as

"Exhibit R."  As a result, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were forced to pay for repairs to remedy the deficiencies at a cost of at least Fifteen-Hundred Dollars ($1,500.00).  See invoice for repairs, attached as "Exhibit S."

86.     On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones management fees for the property in the amount of One-Thousand Forty-Two Dollars and Fifty Cents ($1,042.50) despite the absolute lack of management of the property whatsoever, in addition to other fees.  Ponzi Scheme Defendants also charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones Three-Hundred Thirty-Two ($332.00) for alleged repairs to the property, although it appears that no repairs were ever actually done.  Ponzi Scheme Defendants also charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones unspecified "Professional Fees" of One-Thousand Ninety-Five Dollars ($1,095.00), in addition to management fees for the property.  Further, Ponzi Scheme Defendants continue to illegally withhold the security deposit on this property, which Ponzi Scheme Defendants fraudulently represented as one month's rent or Nine-Hundred Dollars ($900.00) paid by the fictional tenant for the fictional rental amount.  In actuality, the real tenant for this property paid a security deposit of Two-Hundred Fifty Dollars ($250.00), which Ponzi Scheme Defendants continue to illegally withhold and have declined to pay to Plaintiffs and/or their new property management company.

### The 2938 Burlingame House

87.     Ponzi Scheme Defendants marketed a home located at 2938 Burlingame Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, using a document entitled, "Property Information," attached as

"Exhibit T."  The "Property Information" document was created by Defendant Metro Property Group.

88.     The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $950 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $11,400," "Net annual rent roll [of] **$7,560**," and "Net Yield = **16.8%**."  *Exhibit T*.

89.     The Property Information document for this home noted eight (8) significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants.  *Exhibit T*.

90.     Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which specified a rent of Nine Hundred Dollars ($950.00) (and they were later presented with a copy of said lease, which turned out to be fraudulent and forged).

91.     Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was "Section 8 approved" and that the tenant was living there pursuant to said "Section 8 approval."

92.     Based on the documents and information presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones purchased the 2938 Burlingame Street Property from Defendant Global Power Equities, LLC on June 20, 2011 for a purchase price of Forty-Two-Thousand Five-Hundred Dollars ($42,500.00).  The closing package documents which Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones signed were signed by Defendant Mike Alaweih on behalf of Defendant Apex Equities, LLC.  On that same

date, June 20, 2011 and as part of the closing on the property, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit U."

93.     Thereafter, in August 2011, Plaintiff Kathryn Llewellyn-Jones, while doing an Internet search, discovered a rental list, attached as "Exhibit I," belonging to Defendant Metro Property Group, which advertised the 2938 Burlingame Street Property as available for rent at Eight-Hundred Dollars ($800.00), even though Ponzi Scheme Defendants informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was already rented out to a tenant for Nine-Hundred Fifty Dollars ($950.00).  *Exhibit I.*

94.     In fact, as Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned, the lease they had been told about and later shown was fictional, fraudulent, and a forgery, and there was, in fact, no tenant renting or living in the property, which is why there was a listing seeking a tenant to pay a lesser amount than that which was specified on the marketing materials and the lease for the property that was presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones to induce them to purchase the property from Ponzi Scheme Defendants.

95.     When Plaintiff Kathryn Llewellyn-Jones discovered the list of rental properties available for rent, which included the 2938 Burlingame Street home, she immediately contacted Defendant Ali Beydoun to inquire about this stark discrepancy which did not jibe with the marketing documents and signed lease she had been told about by Ponzi Scheme Defendants prior to purchasing the property (the forged, signed lease with which she was finally presented

after repeatedly challenging Ponzi Scheme Defendants about their lies regarding the rental amounts on this property).

96.     Defendant Ali Beydoun lied to her and told her that the list she found was not a Metro Property Group list and belonged to "another agent" over whom he and the other Ponzi Scheme Defendants had "no control."  Plaintiffs learned that this fraudulent statement is Defendant Ali Beydoun's habitual response to the many victims of Ponzi Scheme Defendants' scam, once the victims see rental listings for properties they've purchased from Ponzi Scheme Defendants with the inducement of a fraudulent, forged lease from a fictional tenant for a fictional, higher amount of rent.  Plaintiffs later learned that, in fact, the list they discovered was in fact an actual rental list created and posted by Ponzi Scheme Defendants, including Defendant Ali Beydoun.

97.     Defendant Ali Beydoun further defrauded Plaintiff Kathryn Llewellyn-Jones, telling her that he did not know why the properties were being advertised at the lower rents, but that he had the signed lease in front of him for the property located at 2938 Burlingame Street for a rental rate of Nine-Hundred Fifty Dollars ($950.00) per month and that the tenant had moved in on April 1, 2011.

98.     After Defendant Ali Beydoun sent this false and fraudulent response to Plaintiff Kathryn Llewellyn-Jones, Defendant Kathy Messics, the Client Care Director of Defendant Metro Property Group, LLC, accidentally sent Plaintiff Kathryn Llewellyn-Jones an e-mail message addressed to Defendant Ali Beydoun telling him that Plaintiff Kathryn Llewellyn-Jones had not been fooled by his fraudulent explanations of the rental listing and the tenant on the property and that she (Defendant Kathy Messics) and Defendant Ali Beydoun needed to make up a more credible fraudulent story to further cover up the ongoing Ponzi Scheme.  In the e-mail

message, Defendant Kathy Messics also indicated that there was no lease for this property.  The e-mail message is attached as "Exhibit E."

99.     Although Ponzi Scheme Defendants repeatedly told Plaintiff Kathryn Llewellyn-Jones about and presented her with information regarding an alleged signed lease for the property for a tenant who was allegedly already occupying the premises and paying a rent of Nine-Hundred Dollars ($950.00), Ponzi Scheme Defendants repeatedly failed to present Plaintiff Kathryn Llewellyn-Jones with a copy of said lease, despite her repeated requests for a copy of said lease.

100.     When Defendant Kathy Messics finally sent the lease for the 2938 Burlingame property to Plaintiff Kathryn Llewellyn-Jones, she sent her a lease dated April 1, 2011, and signed by Defendant Sameer Beydoun and an alleged tenant, named, Justine Radcliffe, attached as "Exhibit V."  The lease indicated a monthly rental rate of Nine-Hundred Fifty Dollars ($950.00).  Defendant Kathy Messics also informed Plaintiff Kathryn Llewellyn-Jones that a security deposit equivalent to one month's rent (or Nine-Hundred Fifty Dollars ($950.00)) had been paid by the tenant.  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned that this lease was fraudulent, fictional, and forged, and that it was a pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi Scheme.  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also later discovered that, in fact, at the time, there was no tenant living in the property or paying rent.  Instead, Ponzi Scheme Defendants were paying Plaintiffs the Nine-Hundred Fifty Dollar ($950.00) rent out of the funds that Plaintiffs paid for the home in the first place.

101.     On June 29, 2012, Plaintiff Kathryn Llewellyn-Jones received an e-mail message

from Defendant David Makki, attached as "Exhibit W," informing her that the tenant at 2938

Burlingame had been evicted and that the property had been boarded up.  Plaintiffs Kathryn

Llewellyn-Jones and Mark Llewellyn-Jones received no previous notice that the alleged tenant

had been arrears in the rent.  Plaintiff Kathryn Llewellyn-Jones asked Defendant Makki in

writing to provide an explanation regarding this matter and copies of all correspondence that

Defendant Metro Property Management, LLC had had with the alleged tenant, including the

Judgment for Eviction and details of the alleged tenant's employment.  Despite numerous e-mail

messages (attached as "Exhibit X") from Plaintiff Kathryn Llewellyn-Jones to Defendant David

Makki and Amer Al-Zubaidy, the Collections/Evictions manager of Defendants Metro Property

Group, LLC and Metro Property Management, LLC, requesting these details and documents,

neither Defendant David Makki nor Al-Zubaidy responded nor did they provide the documents,

apparently because there never was any actual tenant living in the property and no legitimate

eviction of an actual tenant ever took place.

102.     Plaintiff Kathryn Llewellyn-Jones informed Defendant David Makki that she

would have a third party inspect the property and asked Defendant Makki to provide keys to the

property.  Defendant Makki declined to make keys to the property available.  *Exhibit X.*

103.     Thereafter, Plaintiff Kathryn Llewellyn-Jones sent a third party to inspect the

property, and it was quite apparent that there was never any tenant living on the premises, as the

home was not habitable and had no heating system or plumbing.  It is quite clear that the lease

for the property for an alleged tenant named Justine Radcliffe which Ponzi Scheme Defendants

provided to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, Exhibit V, is

fraudulent and forged.  It is also quite clear that the rent paid to Plaintiffs Kathryn Llewellyn-

Jones and Mark Llewellyn-Jones for this property was fraudulent Ponzi Scheme money paid to them out of their own money.

104.   Despite the fact that it was quite apparent that there had never been any tenant living on the property at all times relevant and that there, therefore, had never been any legitimate eviction by Ponzi Scheme Defendants of said non-existent tenant, Ponzi Scheme Defendants charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones "Court Fees" of Sixty-Nine Dollars and Fifty Cents ($69.50) and "Eviction Costs" of Fifty-Three Dollars and Fifty Cents ($53.50) plus a general eviction charge of Two-Hundred Twenty-Five Dollars ($225.00).  Ponzi Scheme Defendants' bill for said alleged costs is attached, as "Exhibit Y." Clearly this billing and any illegitimate, fraudulent eviction—if, in fact, any papers were ever filed with 36th District Court in Detroit—were perpetrated by Ponzi Scheme Defendants to cover their tracks and the tracks of their Ponzi scheme, the fact that the lease they presented Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones for this property was fraudulent and forged, and the fact that there was never any tenant living on the property.

105.   As a result of Ponzi Scheme Defendants lack of repairs to the property despite written guarantees that it was a refurbished and tenanted "turnkey property," Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones learned that repairs to remedy the deficiencies on the property would cost at least Eight-Thousand Three-Hundred Twenty-Five Dollars ($8,325.00). See invoice for repairs, attached as "Exhibit Z."  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones continue to lose money on the property as they are required to and, in fact, do pay tax and insurance on the property.  But they have been advised that the area is so poor that the home will not rent and will certainly not rent for the monthly rental which Ponzi Scheme Defendants guaranteed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that a non-

existent, fictional tenant already renting the property was paying, in order to fraudulently induce Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones to purchase the property in the first place.

106.     On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones management fees for the property in the amount of One-Thousand Forty-Five Dollars ($1,045.00) despite the absolute lack of management of the property whatsoever, in addition to other fees.  Ponzi Scheme Defendants also charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones Seventy-Five Dollars ($75.00) for alleged repairs to the property, although it appears that no repairs were ever actually done.  Ponzi Scheme Defendants also charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones unspecified "Professional Fees" of Five-Hundred Ninety-Five Dollars ($595.00), in addition to management fees for the property.  Further, Ponzi Scheme Defendants also billed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones an additional Nine-Hundred Dollars ($900.00) for some fictional amount just before the fictional, non-existent tenant was allegedly evicted (in a fictional, non-existent "eviction").

**The 18257 Lauder House**

107.     Ponzi Scheme Defendants marketed a home located at 18257 Lauder Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, using a document entitled, "Property Information," attached as "Exhibit AA."  The "Property Information" document was created by Defendant Sameer Beydoun.

108.     The Property Information document stated that the home at this address is

"Currently rented to a pre-screened, up to date tenant for $925 per month" and guaranteed the buyer of this home, "Gross [of] $11,100," "Net annual rent roll [of] **$7,590.00**," and "Net Yield = **16%**." *Exhibit AA*.

109.    The Property Information document for this home listed nine (9) major repairs to the home that had allegedly been performed by Ponzi Scheme Defendants. *Exhibit AA*.

110.    Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which specified a rent of Nine Hundred Dollars ($925.00) (and they were later presented with a copy of said lease, which turned out to be fraudulent and forged).

111.    Ponzi Scheme Defendants also informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that the property was "Section 8 approved" and that the tenant was living there pursuant to said "Section 8 approval."

112.    Based on the documents and information presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones purchased the 18257 Lauder Street Property from Defendant Global Power Equities, LLC on July 27, 2011 for a purchase price of Forty-Eight Thousand Dollars ($48,000.00).  The closing package documents which Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones signed were signed by Defendant Mike Alaweih on behalf of Defendant Apex Equities, LLC.  On that same date, July 27, 2011 and as part of the closing on the property, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also signed a "Management Agreement" with Defendant Metro Property

Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit BB."

113.    As previously noted herein, in August 2011, Plaintiff Kathryn Llewellyn-Jones, while doing an Internet search, discovered a rental list, attached as "Exhibit I," belonging to Defendant Metro Property Group, which advertised her 16527 Griggs Street and 2938 Burlingame Street properties as available for rent at Eight-Hundred Dollars ($800.00), even though Ponzi Scheme Defendants informed Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones that these properties were already rented out to a tenant for much higher rents. *Exhibit I.*

114.    After discovering this suspicious rental listing, Plaintiff Kathryn Llewellyn-Jones began to wonder whether or not Ponzi Scheme Defendants had done the same with the 18257 Lauder Street property—lied to her about the amount of the rent and their claim that the property was already tenanted pursuant to a signed lease agreement.

115.    In fact, as Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned, the lease they had been told about and later shown was fictional, fraudulent, and a forgery, and there was, in fact, a completely different tenant renting and living in the property, and she was paying a lesser amount than that which was specified on the marketing materials and the lease for the property that was presented to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones to induce them to purchase the property from Ponzi Scheme Defendants.

116.    When Plaintiff Kathryn Llewellyn-Jones discovered the list of rental properties available for rent, which included her two other properties, she immediately contacted Defendant Ali Beydoun to inquire about this stark discrepancy and whether the same was the case with the 18257 Lauder property.

117.     Defendant Ali Beydoun lied to her and told her that the list she found was not a Metro Property Group list and belonged to "another agent" over whom he and the other Ponzi Scheme Defendants had "no control."  Plaintiffs learned that this fraudulent statement is Defendant Ali Beydoun's habitual response to the many victims of Ponzi Scheme Defendants' scam, once the victims see rental listings for properties they've purchased from Ponzi Scheme Defendants with the inducement of a fraudulent, forged lease from a fictional tenant for a fictional, higher amount of rent.  Plaintiffs later learned that, in fact, the list they discovered was in fact an actual rental list created and posted by Ponzi Scheme Defendants, including Defendant Ali Beydoun.

118.     Defendant Ali Beydoun further defrauded Plaintiff Kathryn Llewellyn-Jones, telling her that he did not know why the properties were being advertised at the lower rents, but that he had the signed leases in front of him for all three properties she had purchased from Ponzi Scheme Defendants and that the rental amounts jibed with what she had been told were the rental amounts which induced her and Plaintiff Mark Llewellyn-Jones to purchase the properties.

119.     After Defendant Ali Beydoun sent this false and fraudulent response to Plaintiff Kathryn Llewellyn-Jones, Defendant Kathy Messics, the Client Care Director of Defendant Metro Property Group, LLC, accidentally sent Plaintiff Kathryn Llewellyn-Jones an e-mail message addressed to Defendant Ali Beydoun telling him that Plaintiff Kathryn Llewellyn-Jones had not been fooled by his fraudulent explanations of the rental listing and the tenant on the property and that she (Defendant Kathy Messics) and Defendant Ali Beydoun needed to make up a more credible fraudulent story to further cover up the ongoing Ponzi Scheme.  In the e-mail message, Defendant Kathy Messics also indicated that there was no lease for this property.  The e-mail message is attached as "Exhibit E."

120.     Although Ponzi Scheme Defendants repeatedly told Plaintiff Kathryn Llewellyn-Jones about and presented her with information regarding an alleged signed lease for the 18257 Lauder property for a tenant who was allegedly already occupying the premises and paying a monthly rent of Nine-Hundred Twenty-Five Dollars ($925.00), Ponzi Scheme Defendants repeatedly failed to present Plaintiff Kathryn Llewellyn-Jones with a copy of said lease, despite her repeated requests for a copy of said lease.

121.     When Defendant Kathy Messics finally sent the lease for the 18257 Lauder property to Plaintiff Kathryn Llewellyn-Jones, she sent her a lease dated June 1, 2011, and signed by Defendant Sameer Beydoun and a tenant named, Jamie Fletcher, attached as "Exhibit CC."  The lease indicated a monthly rental rate of Nine-Hundred Twenty-Five Dollars ($925.00). Defendant Kathy Messics also informed Plaintiff Kathryn Llewellyn-Jones that a security deposit equivalent to one month's rent (or Nine-Hundred Dollars ($925.00)) had been paid by the tenant.  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones soon learned that this lease was fraudulent, fictional, and forged, and that it was a pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi Scheme.  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones also later discovered that, in fact, at the time, a completely different tenant was living on the property and paying a significantly lower amount of rent—only Nine-Hundred Dollars ($900.00) per month.  Her actual lease is attached as "Exhibit DD."

122.     Thereafter, Plaintiff Kathryn Llewellyn-Jones asked an independent third party to contact the tenant of this property directly to learn the truth.  The tenant, Kim Johnson, stated that she had lived in the property for a period of two (2) years and provided documents proving this.  She also stated that she has never heard of "Jamie Fletcher," the name of the alleged tenant on the apparently forged lease which Ponzi Scheme Defendants send Plaintiffs for this property.

The tenant also stated that her rent has been in abatement since April 2012 (see "Rent Abatement Notice," attached as "Exhibit EE") because the property needs so many repairs and that she wished to move out because the home was in such disrepair.  See Affidavit of Kim Johnson, attached as Exhibit FF.  Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones knew nothing of this because they were never informed of any of this by Ponzi Scheme Defendants. Photos of the home showed that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones  to purchase the home.

123.    The actual tenant, Ms. Johnson, produced her actual lease, *Exhibit DD*, which is also signed by Defendant Sameer Beydoun, just as he signed the forged lease dated June 1, 2011. Thus, the Nine-Hundred Dollar ($925.00) per month rent paid to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones for this property to that point was fraudulent and, in fact, despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, there was never a tenant of the property who paid Nine-Hundred Dollars ($925.00) per month rent. Clearly, the phony rent payments were made at the beginning in order to fool Plaintiffs into believing that the house was habitable, tenanted, and earning a high monthly return.

124.    Because Ponzi Scheme Defendants never refurbished the property as claimed and never managed any repairs on this property, the property failed its HAP Section 8 Inspection. See U.S. Department of Housing and Urban Development Housing Choice Voucher Program "Inspection Checklist," attached as "Exhibit GG."

125.    Because Ponzi Scheme Defendants never refurbished the property as claimed and

never managed any repairs on this property and because the property failed its HAP Section 8 Inspection the property was fined Five-Thousand Seven-Hundred Sixty-One Dollars and Eighty Cents ($5,761.80) on December 4, 2012, a fee which Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were forced to pay.  See Detroit Housing Commission "Rent Abatement Notice," dated November 10, 2012, and attached as "Exhibit EE."  Because of this, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, received no rental income from the property until March 2013, after they fired Ponzi Scheme Defendants and paid thousands of dollars to repair the property which was fraudulently marketed and sold to them by Ponzi Scheme Defendants as "refurbished."

126.    Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones were forced to pay for repairs to remedy the deficiencies on the property at a cost of at least Four-Thousand One-Hundred Dollars ($4,100.00).  See invoiced for repairs, attached as "Exhibit HH."  Despite all of these repairs, because the property was never refurbished by Ponzi Scheme Defendants, Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones, are still receiving no rental income from the property, to date.

127.    On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones management fees for the property in the amount of Nine-Hundred Twenty-Five Dollars ($925.00), despite the absolute lack of management of the property whatsoever, in addition to other fees.  Ponzi Scheme Defendants also charged Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones One-Hundred Twenty-Five ($125.00) for alleged repairs to the property, although it appears that no repairs were ever actually done. Further, Ponzi Scheme Defendants continue to illegally withhold the security deposit on this property, which Ponzi Scheme Defendants fraudulently represented as one month's rent or Nine-

Hundred Twenty-Five Dollars ($925.00) paid by the fictional tenant for the fictional rental amount.  In actuality, the real tenant for this property paid a security deposit of Two-Hundred Fifty Dollars ($250.00), which Ponzi Scheme Defendants continue to illegally withhold and have declined to pay to the Plaintiffs and/or their new property management company.

### The 16177 Birwood House

128.    Plaintiff Kathryn Llewellyn-Jones, upon beginning to discover the Ponzi scheme surrounding the homes which Ponzi Scheme Defendants fraudulently sold to her and Mark Llewellyn-Jones, became concerned regarding a home that her sister, Caroline Jones, purchased from Ponzi Scheme Defendants, located at 16177 Birwood Street in the City of Detroit, County of Wayne, State of Michigan.

129.    Ponzi Scheme Defendants marketed the 16177 Birwood home to Plaintiff Caroline Jones, using a document entitled, "Property Information," attached as "Exhibit II."  The "Property Information" document was created by Defendant Metro Property Group.

130.    The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $900 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $10,800," "Net annual rent roll [of] **$7,620**," and "Net Yield = **16.9%**."  *Exhibit II*.

131.    The Property Information document for this home noted several significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants.  *Exhibit II*.

132.    Ponzi Scheme Defendants also informed  Plaintiff Caroline Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which

specified a rent of Nine Hundred Dollars ($900.00) (and she was later presented with a copy of said lease, which turned out to be fraudulent and forged).

133.    Based on the documents and information presented to Plaintiff Caroline Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiff Caroline Jones purchased the 16177 Birwood Street property from Defendant Global Power Equities, LLC on July 27, 2011 for a purchase price of Forty-One Thousand Dollars ($41,000.00).  On that same date, July 27, 2011 and as part of the closing on the property, Plaintiff Caroline Jones also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit JJ."

134.    Thereafter, when Plaintiff Kathryn Llewellyn-Jones discovered the rental listings posted by Metro Property Group for her homes and began to unravel Ponzi Scheme Defendants' fraud, she asked her sister, Plaintiff Caroline Jones, if Caroline Jones had the lease for this property.

135.    In fact, to that point, Ponzi Scheme Defendants never gave Plaintiff Caroline Jones a copy of said lease.  Plaintiff Caroline Jones then requested a copy of the lease and those of two (2) other properties she purchased from Ponzi Scheme Defendants.

136.    When Defendant Kathy Messics finally sent the lease, attached as "Exhibit KK," on July 5, 2012, Plaintiffs Kathryn Llewellyn-Jones and Caroline Jones immediately noted that the lease, and those of two (2) other properties she purchased from Ponzi Scheme Defendants, appeared to be forgeries.  The alleged tenant signatures were ludicrous, and looked like they were forged.  The alleged signature of Defendant Sameer Baydoun on the three (3) leases bore no resemblance to Defendant Sameer Baydoun's alleged signatures on the leases for the

properties purchased from Ponzi Scheme Defendants by Plaintiffs Kathryn Llewellyn-Jones and

Mark Llewellyn-Jones and other parties, even though several of those documents had allegedly

been signed on the same day. Upon information and belief, Defendants George Vanderburg and

Kathy Messics forged all of the signatures on the leases (at Defendant Sameer Beydoun's request

and with his full knowledge), as Plaintiffs ultimately discovered that all of the leases presented to

them by Ponzi Scheme Defendants were fraudulent, fabricated, and forged.

137.    In fact, as Plaintiff Caroline Jones soon learned, the lease she had been told about

and later shown was not only fictional, fraudulent, and a forgery, but there was, in fact, a

completely different tenant renting and living in the property, and she was paying a lesser

amount than that which was specified on the marketing materials and the lease for the property

that was presented to Plaintiff Caroline Jones to induce her to purchase the property from Ponzi

Scheme Defendants.

138.    On June 27, 2012, Defendant Kathy Messics sent an e-mail message, attached as

"Exhibit LL," to Plaintiff Caroline Jones, stating that Plaintiff Caroline Jones' tenant at this

property was in the process of being evicted for non-payment of rent. *Exhibit LL.*

139.    On July 11, 2012, Defendant Tarek M. Baydoun, who then held the title of

"General Counsel" for Defendants Metro Property Group, LLC, Metro Property Management,

LLC, Global Power Equities, LLC, and Apex Equities, LLC, and his assistant, Loryn Frabutt

(who is still an employee of Ponzi Scheme Defendants), sent an e-mail message, attached as

"Exhibit MM," to Plaintiff Caroline Jones, stating that Plaintiff Caroline Jones' tenant at this

property had stopped paying rent in June and had been evicted. In the message, Defendant Tarek

M. Baydoun also stated that the property was now empty and that Ponzi Scheme Defendants

were looking for a new tenant for the property. *Exhibit MM.*

140.    For the months of June and July 2012, Plaintiff Caroline Jones received monthly rental statement from Ponzi Scheme Defendants, attached as "Exhibit NN," showing zero (0) rent from the tenant, and charges of Fifty-Three Dollars and Fifty Cents ($53.50) for "Court Fees" and Three-Hundred Dollars ($300.00) for "Eviction Legal Fees."  *Exhibit NN*

141.    In fact, the "zero rent" on the June and July 2012 rental statements and the "Court Fees" and "Eviction Legal Fees" for an alleged eviction was fraudulent, as the tenant of 16177 Birwood continued to live on the property and pay rent.

142.    In fact, the fraudulent rental statements and eviction were deliberate and designed to cover Ponzi Scheme Defendants' tracks and the fraudulent lease and alleged tenant they presented Plaintiff Caroline Jones (on written marketing materials, *Exhibit II*, and in the forged lease, *Exhibit KK*) to fraudulently induce her to purchase the property and to keep their Ponzi scheme fraud from being uncovered by her.

143.    The lease, which Defendant Kathy Messics finally sent to Plaintiff Caroline Jones for the 16177 Birwood is dated July 1, 2011, and signed by Defendant Sameer Beydoun and a tenant named, Tamika Davis.  The lease indicated a monthly rental rate of Nine-Hundred Dollars ($900.00).  *Exhibit KK*.  Plaintiff Caroline Jones soon learned that this lease was fraudulent, fictional, and forged, that it was a pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi Scheme and that, in fact, at the time, there was no tenant on the property.  Later, a completely different tenant, Ebony Glass, was living on the property and paying a significantly lower amount of rent—only Six-Hundred Fifty Dollars ($650.00) per month.  Her actual lease is attached as "Exhibit OO."  At all times relevant, no tenant named, "Tamika Davis," lived on the property and/or had a valid lease to it.  See Affidavit of Ebony Glass, attached as "Exhibit PP."

144.     Ebony Glass signed a lease for 16177 Birwood and moved into the property on September 9, 2011 (and no credit check was performed prior to her signing the lease and moving into the property).  At the time that she looked at the property and signed the lease, on or about September 5 or 6, 2011, there was an air conditioning unit behind the home.  On the date she moved into the home, there was no longer any air conditioning unit.  The home has been in severe disrepair since before she moved into the property, and Ponzi Scheme Defendants responded only once to her more than Thirty (30) phone calls to Ponzi Scheme Defendants for urgent repairs, including a door on the second floor of the home which opens to a two-story fall to the cracked cement ground, below.  On one occasion her nephew nearly fell through the first floor into the basement and the basement light is clearly visible through a giant crack from the kitchen to the basement.  Ebony Glass does not know anyone named, "Tamika Davis," and no one by that name has lived on the property since the date that Ebony Glass moved into 16177 Birwood on September 9, 2011.  Affidavit of Ebony Glass, Exhibit PP.

145.     Receipts show that Ebony Glass fully and timely paid rent for the property to Ponzi Scheme Defendants, and that they were aware of this.  Despite the many alleged "evictions," including the one billed by Ponzi Scheme Defendants to Plaintiff Caroline Jones, and despite the written claims by Defendants Tarek M. Baydoun and Kathy Messics that the tenant allegedly living on the property was evicted from the property, Ebony Glass had never been evicted and continues to live on the property to date.  However, Ponzi Scheme Defendants, including attorney Tarek M. Baydoun, repeatedly filed fraudulent  evictions against her and/or a non-existent "trespasser" (they knew there was no "trespasser" or "squatter" on the property) to cover the tracks of their Ponzi scheme fraud.  Once they realized that Plaintiffs were beginning to uncover Ponzi Scheme Defendants' fraudulent scheme, Ponzi Scheme Defendants apparently

wanted Ms. Glass removed from the property so that Plaintiff Caroline Jones would not learn that there was no tenant, including an alleged "Tamika Davis," when Plaintiff Caroline Jones was fraudulently induced to purchase the property from Ponzi Scheme Defendants and that the lease that Ponzi Scheme Defendants presented to Plaintiff Caroline Jones was fraudulent and forged and featured a rent that was not accurate and hundreds of dollars above the rent for which the property was actually later leased after Plaintiff Caroline Jones purchased it.  See fraudulent eviction documents, attached as "Exhibit QQ."

146.    The home at 16177 Birwood remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiff Caroline Jones knew nothing of this because she was never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiff Caroline Jones to purchase the home.

147.    Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiff Caroline Jones, there was never a tenant of the property who paid Nine-Hundred Dollars ($900.00) per month rent.  Clearly, the phony rent payments were made at the beginning in order to fool Plaintiff Caroline Jones into believing that the house was habitable, tenanted, and earning a high monthly return.

148.    Because Ponzi Scheme Defendants never refurbished the property as claimed, never managed any repairs on this property, and never registered the property as a rental with the City of Detroit as required by law, Plaintiff Caroline Jones has been fined hundreds of dollars by the City of Detroit.  See documents attached as "Exhibit RR."  As a result, Plaintiff Caroline

Jones is now forced to pay at least Eight-Thousand One-Hundred Sixty Dollars ($8,160.00) for repairs to remedy the deficiencies on the property.

149.    On top of all of this, Ponzi Scheme Defendants charged Plaintiff Caroline Jones nearly One Thousand Dollars ($1,000.00) in management fees for the property, despite the absolute lack of management of the property whatsoever, in addition to other fees.  Moreover, the security deposit for this property was illegally withheld by Ponzi Scheme Defendants and never transferred to Plaintiff Caroline Jones or to the new management company that she hired to attend to the property.

## The 12825 Archdale House

150.    Plaintiff Kathryn Llewellyn-Jones, upon beginning to discover the Ponzi scheme surrounding the homes which Ponzi Scheme Defendants fraudulently sold to her and Mark Llewellyn-Jones, became concerned regarding a home that her sister, Caroline Jones, purchased from Ponzi Scheme Defendants, located at 12825 Archdale Street in the City of Detroit, County of Wayne, State of Michigan.

151.    Ponzi Scheme Defendants marketed the 12825 Archdale home to Plaintiff Caroline Jones, using a document entitled, "Property Information," attached as "Exhibit SS." The "Property Information" document was created by Defendant Metro Property Group.

152.    The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $925 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $11,100," "Net annual rent roll [of] **$7,190**," and "Net Yield = **16%**." *Exhibit RR*.

153.    The Property Information document for this home noted several significant

repairs to the home that had allegedly been performed by Ponzi Scheme Defendants. *Exhibit SS*.

154.   Ponzi Scheme Defendants also informed  Plaintiff Caroline Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which specified a rent of Nine-Hundred Twenty-Five Dollars ($925.00) (and she was later presented with a copy of said lease, which turned out to be fraudulent and forged).

155.   Based on the documents and information presented to Plaintiff Caroline Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiff Caroline Jones purchased the 12825 Archdale Street property from Defendant Global Power Equities, LLC on June 30, 2011 for a purchase price of Forty-Five Thousand Dollars ($45,000.00).  On that same date, June 30, 2011 and as part of the closing on the property, Plaintiff Caroline Jones also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit TT."

156.   As previously noted herein, in August 2011, Plaintiff Kathryn Llewellyn-Jones, while doing an Internet search, discovered a rental list, attached as "Exhibit I," belonging to Defendant Metro Property Group, which advertised her sister, Plaintiff Caroline Jones' 12825 Archdale Street property as available for rent at Eight-Hundred Dollars ($800.00), even though Ponzi Scheme Defendants informed Plaintiff Caroline Jones that this property was already rented out to a tenant for much higher rent. *Exhibit I*.

157.   As also previously noted herein, when confronted about this list and the rent discrepancy (as well as the vacancy discrepancy) on this property, Defendant Ali Beydoun lied to Plaintiff Kathryn Llewellyn-Jones and told her that the list she found was not a Metro Property Group list and belonged to "another agent" over whom he and the other Ponzi Scheme

Defendants had "no control."  Plaintiffs learned that this fraudulent statement is Defendant Ali Beydoun's habitual response to the many victims of Ponzi Scheme Defendants' scam, once the victims see rental listings for properties they've purchased from Ponzi Scheme Defendants with the inducement of a fraudulent, forged lease from a fictional tenant for a fictional, higher amount of rent.  Plaintiffs later learned that, in fact, the list they discovered was in fact an actual rental list created and posted by Ponzi Scheme Defendants, including Defendant Ali Beydoun.

158.    Defendant Ali Beydoun further defrauded Plaintiff Kathryn Llewellyn-Jones, telling her that he did not know why the properties were being advertised at the lower rents, but that he had the signed lease in front of him for the property located at 12825Archdale Street for a rental rate of Nine-Hundred Twenty-Five Dollars ($925.00) per month and that the tenant had moved in on April 1, 2011.

159.    As previously noted, after Defendant Ali Beydoun sent this false and fraudulent response to Plaintiff Kathryn Llewellyn-Jones, Defendant Kathy Messics, the Client Care Director of Defendant Metro Property Group, LLC, accidentally sent Plaintiff Kathryn Llewellyn-Jones an e-mail message addressed to Defendant Ali Beydoun telling him that Plaintiff Kathryn Llewellyn-Jones had not been fooled by his fraudulent explanations of the rental listing and the tenant on the property and that she (Defendant Kathy Messics) and Defendant Ali Beydoun needed to make up a more credible fraudulent story to further cover up the ongoing Ponzi Scheme.  In the e-mail message, Defendant Kathy Messics also indicated that there was no lease for this property.  The e-mail message is attached as "Exhibit E."

160.    Thereafter, when Plaintiff Kathryn Llewellyn-Jones began to uncover Ponzi Scheme Defendants' fraud, she asked her sister, Plaintiff Caroline Jones, if Caroline Jones had the lease for this property.

161.    In fact, to that point, Ponzi Scheme Defendants never gave Plaintiff Caroline Jones a copy of said lease.  Plaintiff Caroline Jones then requested a copy of the lease and those of two (2) other properties she purchased from Ponzi Scheme Defendants.

162.    When Defendant Kathy Messics finally sent the lease, attached as "Exhibit UU," on July 5, 2012, Plaintiffs Kathryn Llewellyn-Jones and Caroline Jones immediately noted that the lease, and those of two (2) other properties she purchased from Ponzi Scheme Defendants, appeared to be forgeries.  The alleged tenant signatures were ludicrous, and looked like they were forged.  The alleged signature of Defendant Sameer Baydoun on the three (3) leases bore no resemblance to Defendant Sameer Baydoun's alleged signatures on the leases for the properties purchased from Ponzi Scheme Defendants by Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones and other parties, even though several of those documents had allegedly been signed on the same day.  Upon information and belief, Defendants George Vanderburg and Kathy Messics forged all of the signatures on the leases (at Defendant Sameer Beydoun's request and with his full knowledge), as Plaintiffs ultimately discovered that all of the leases presented to them by Ponzi Scheme Defendants were fraudulent, fabricated, and forged.

163.    In fact, as Plaintiff Caroline Jones soon learned, the lease she had been told about and later shown was not only fictional, fraudulent, and a forgery, but there was, in fact, a completely different tenant renting and living in the property, and she was paying a lesser amount than that which was specified on the marketing materials and the lease for the property that was presented to Plaintiff Caroline Jones to induce her to purchase the property from Ponzi Scheme Defendants.

164.    The lease which Ponzi Scheme Defendants sent Plaintiff Caroline Jones for this property is dated July 1, 2011, bears the name and alleged signature of an alleged tenant, named

"Shameka Young,"  and a rent of Eight-Hundred Fifty Dollars ($850.00) per month, not the

Nine-Hundred Twenty-Five Dollars per month ($925.00) per month rent featured on the

marketing materials and the alleged lease which Ponzi Scheme Defendants used to fraudulently

induce Plaintiff Caroline Jones to purchase the property.

165.   Plaintiff Caroline Jones soon learned that the alleged lease for this property

Sent to her by Defendant Kathy Messics was fraudulent, fictional, and forged, that it was a

pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi

Scheme and that, in fact, at the time, there was no tenant on the property.  Later, a completely

different tenant, Annie Caffey, was living on the property and paying a significantly lower

amount of rent—only Seven-Hundred Dollars ($700.00) per month.  Her actual lease is attached

as "Exhibit VV."  At all times relevant, no tenant named, "Shameka Young," lived on the

property and/or had a valid lease to it.

166.   Annie Caffey, the actual tenant of this property, signed a lease for this property

and moved into the property on September 1, 2011.  Contrary to Ponzi Scheme Defendants'

written marketing materials, the home was not refurbished and has been in severe disrepair since

before she moved into the property.  The home on this property remained in absolute disrepair

during the entire time that it was "managed" by Ponzi Scheme Defendants.  See Affidavit of

Annie Caffey, attached as Exhibit WW.  Plaintiff Caroline Jones knew nothing of this because

she was never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show

that the home was never refurbished, contrary to the explicit written and verbal statements by

Ponzi Scheme Defendants made to induce Plaintiff Caroline Jones to purchase the home.

167.   Despite fraudulent representations by Ponzi Scheme Defendants to the contrary

prior to and after the sale of this property to Plaintiff Caroline Jones, there was never a tenant of

the property who paid Nine-Hundred Twenty-Five Dollars ($925.00) per month rent (per Ponzi Scheme Defendants' marketing materials for this property) or even Eight-Hundred Fifty Dollars ($850.00) per month (per Ponzi Scheme Defendants' fraudulent, forged lease for this property). Clearly, the phony rent payments were made at the beginning in order to fool Plaintiff Caroline Jones into believing that the house was habitable, tenanted, and earning a high monthly return.

168.     Because Ponzi Scheme Defendants never refurbished the property as they fraudulently claimed and never managed any repairs on this property, Plaintiff Caroline Jones also discovered that the property was not up to Section 8 standards, and, therefore, the rental payments were held in abatement.  Therefore, even after the tenant moved in, no actual rent was coming in to Ponzi Scheme Defendants at all, with the rent being paid to Plaintiff Caroline Jones consisting of Ponzi Scheme payments paid out of the inflated price for the property, which Plaintiff Caroline Jones was defrauded into paying Ponzi Scheme Defendants in the first place.

169.     Plaintiff Caroline Jones was forced to pay over Two-Thousand Eight-Hundred Dollars ($2,800.00) for repairs to remedy the deficiencies on the property in order for it to meet Section 8 standards.  Moreover, the security deposit for this property was illegally withheld by Ponzi Scheme Defendants and never transferred to Plaintiff Caroline Jones or to the new management company that she hired to attend to the property.

## The 18667 Prairie House

170.     Ponzi Scheme Defendants marketed a home located at 18667 Prairie Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiff Caroline Jones, using a document entitled, "Property Information," attached as "Exhibit XX."  The "Property Information" document was created by Defendant Metro Property Group.

171.    The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $950 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $11,400," "Net annual rent roll [of] **$7,460**," and "Net Yield = **16.6%**." *Exhibit XX*.

172.    The Property Information document for this home noted several significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants, including "Newly installed durable PEX plumbing throughout the home."  In a footnote, the document states, "PEX is cross-linked polyethylene.  This resulting material is more durable under temperature extremes, chemical attack, and better resists creep deformation, making PEX an excellent material for hot and cold water and other applications."  *Exhibit XX*.

173.    Ponzi Scheme Defendants also informed  Plaintiff Caroline Jones that the property was already occupied by a tenant who had signed, executed lease to the property, which specified a rent of Nine-Hundred Fifty Dollars ($950.00) (and she was later presented with a copy of said lease, which turned out to be fraudulent and forged).

174.    Based on the documents and information presented to Plaintiff Caroline Jones by Ponzi Scheme Defendants, as described *supra*, Plaintiff Caroline Jones purchased the 18667 Prairie Street property from Defendant Global Power Equities, LLC on August 15, 2011 for a purchase price of Forty-Five Thousand Dollars ($45,000.00).  On that same date, August 15, 2011 and as part of the closing on the property, Plaintiff Caroline Jones also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit YY."

175.    Thereafter, when Plaintiff Kathryn Llewellyn-Jones discovered the rental listings posted by Metro Property Group for her homes and began to unravel Ponzi Scheme Defendants' fraud, she asked her sister, Plaintiff Caroline Jones, if Caroline Jones had the lease for this property.

176.    In fact, Ponzi Scheme Defendants to that point, Plaintiff Caroline Jones a copy of said lease.  Plaintiff Caroline Jones then requested a copy of the lease and those of two (2) other properties she purchased from Ponzi Scheme Defendants.

177.    When Defendant Kathy Messics finally sent the lease, attached as "Exhibit ZZ," on July 5, 2012, Plaintiffs Kathryn Llewellyn-Jones and Caroline Jones immediately noted that the lease, and those of two (2) other properties she purchased from Ponzi Scheme Defendants, appeared to be forgeries.  The alleged tenant signatures were ludicrous, and looked like they were forged.  The alleged signature of Defendant Sameer Baydoun on the three (3) leases bore no resemblance to Defendant Sameer Baydoun's alleged signatures on the leases for the properties purchased from Ponzi Scheme Defendants by Plaintiffs Kathryn Llewellyn-Jones and Mark Llewellyn-Jones and other parties, even though several of those documents had allegedly been signed on the same day.  Upon information and belief, Defendants George Vanderburg and Kathy Messics forged all of the signatures on the leases (at Defendant Sameer Beydoun's request and with his full knowledge), as Plaintiffs ultimately discovered that all of the leases presented to them by Ponzi Scheme Defendants were fraudulent, fabricated, and forged.

178.    In fact, as Plaintiff Caroline Jones soon learned, the lease she had been told about and later shown was not only fictional, fraudulent, and a forgery, but there was, in fact, a completely different tenant renting and living in the property, and she was paying a lesser amount than that which was specified on the marketing materials and the lease for the property

that was presented to Plaintiff Caroline Jones to induce her to purchase the property from Ponzi Scheme Defendants.

179.    The lease, which Defendant Kathy Messics finally sent to Plaintiff Caroline Jones for the 18667 Prairie is dated May 1, 2011, and signed by Defendant Sameer Beydoun and a tenant named, Michelle Clinton.  The lease indicated a monthly rental rate of Nine-Hundred Fifty Dollars ($950.00).  *Exhibit ZZ*.  Plaintiff Caroline Jones soon learned that this lease was fraudulent, fictional, and forged, that it was a pretense to keep the Ponzi Scheme going and prevent Plaintiffs from discovering the Ponzi Scheme and that, in fact, a completely different tenant, Melissa Gross, was living on the property and paying a significantly lower amount of rent—only Seven-Hundred Dollars ($700.00) per month.  Her actual lease is attached as "Exhibit AAA."  At all times relevant, no tenant named, "Michelle Clinton," lived on the property and/or had a valid lease to it.  See Affidavit of Melissa Gross, attached as Exhibit BBB.

180.    Plaintiff Caroline Jones discovered that there was no tenant and/or resident of the property named, "Michelle Clinton," because, on July 9, 2012, Defendant Kathy Messics contacted Plaintiff Caroline Jones, in an e-mail message attached as, "Exhibit CCC," that the tenant, Melissa Gross, needed an outlet valve and the repair of a broken pipe in the floor at a cost to Plaintiff Caroline Jones of Four-Hundred Twenty Dollars ($420.00), an expensive and curious repair for a home which Ponzi Scheme Defendants represented as "newly refurbished," and one with "Newly installed PEX plumbing throughout the home."  *Exhibit XX*.  (Defendant Messics claimed "the broken pipe is made of clay, and therefore susceptible to erosion," and blamed the broken pipe on the "sewage system in the City of Detroit [which] is over 100 years old.")  Plaintiff Caroline Jones responded to Defendant Kathy Messics by asking her whether she meant the tenant "Michelle Clinton."  *Exhibit CCC*.  Defendant Kathy Messics, caught in her Ponzi

scheme fraud and lies (as there was, in fact, no tenant named, "Michelle Clinton," on the lease or living on the property), responded with a new lie, stating that Melissa Gross "lives with Michelle Clinton.  Her name isn't on the lease, but it's on the rental application as a resident of the property." *Exhibit CCC*.

181.    In fact, Melissa Gross is and has been the only tenant of the property for the entire period of time during which Plaintiff Caroline Jones has owned it.  In fact, there was no Michelle Clinton.  In fact, Melissa Gross has never met or heard of anyone named, "Michelle Clinton." Affidavit of Melissa Gross, Exhibit BBB.

182.    The home at 18667 Prairie remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiff Caroline Jones knew nothing of this because she was never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiff Caroline Jones to purchase the home.

183.    Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiff Caroline Jones, there was never a tenant of the property who paid Nine-Hundred Fifty Dollars ($950.00) per month rent.  Clearly, the phony rent payments were made at the beginning in order to fool Plaintiff Caroline Jones into believing that the house was habitable, tenanted, and earning a high monthly return.

184.    Because Ponzi Scheme Defendants never refurbished the property as claimed, never managed any repairs on this property, Plaintiff Caroline Jones is now forced to pay thousands of dollars for repairs to remedy the deficiencies on the property, including a new roof,

plumbing, electrical work, and so on.  Because of the horrible condition of the home, the tenant

has not paid rent for months and is very wary of continuing to tenant the property.

185.    On top of all of this, Ponzi Scheme Defendants charged Plaintiff Caroline Jones

nearly One Thousand Dollars ($1,000.00) in management fees for the property, despite the

absolute lack of management of the property whatsoever, in addition to other fees.  Moreover,

the security deposit for this property was illegally withheld by Ponzi Scheme Defendants and

never transferred to Plaintiff Caroline Jones or to the new management company that she hired to

attend to the property.


### The 18013 Indiana House

186.    Ponzi Scheme Defendants marketed a home located at 18013 Indiana Street in

the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Peter Green and Lesley

Green, using a document entitled, "Property Information," attached as "Exhibit DDD."  The

"Property Information" document was created by Defendant Sameer Beydoun.

187.    The Property Information document stated that the home at this address is

"Currently rented to a pre-screened, up to date tenant for $1,000 per month" and guaranteed the

buyer of this home, "Gross yearly income [of] $12,000," "Net annual rent roll [of] **8,950**," and

"Net Yield = **17.3%**."  *Exhibit DDD*.

188.    The Property Information document for this home noted several significant

repairs to the home that had allegedly been performed by Ponzi Scheme Defendants.  *Exhibit*

*DDD*.

189.    Ponzi Scheme Defendants also informed Plaintiffs Peter Green and Lesley Green

that the property was already occupied by a tenant who had a signed, executed lease to the

property, which specified a rent of One-Thousand Dollars ($1,000.00).  Despite Plaintiff Peter

Green's repeated requests to see the lease for the property, Ponzi Scheme Defendants repeatedly

declined and/or refused to give him a copy.  To date, Ponzi Scheme Defendants have never

provided Plaintiffs Peter Green and Lesley Green with a copy of the lease for the property, and

Plaintiffs Peter Green and Lesley Green only obtained a copy of the real lease for the property

after terminating Defendant Metro Property Management, LLC from the management of the

property.

190.    Based on the documents and information presented to Plaintiffs Peter Green and

Lesley Green by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Peter Green and

Lesley Green purchased the 18013 Indiana Street property from Defendant Global Power

Equities, LLC in May 2012 for a purchase price of Fifty Thousand Dollars ($50,000.00).  On that

same date, and as part of the closing on the property, Plaintiffs Peter Green and Lesley Green

also signed a "Management Agreement" with Defendant Metro Property Management, LLC,

which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property

Management, LLC, attached as "Exhibit EEE."

191.    Ponzi Scheme Defendants never gave Plaintiffs Peter Green and Lesley Green a

copy of the lease for the property.  Plaintiff Peter Green repeatedly requested a copy of the lease

from Ponzi Scheme Defendants to no avail.

192.    When Plaintiffs Peter Green and Lesley Green finally obtained the real lease for

the property from their tenants, attached as "Exhibit FFF," after terminating Defendant Metro

Property Management LLC, Plaintiffs Peter Green and Lesley Green immediately noted that rent

for the property, pursuant to the lease, was only Seven-Hundred Fifty Dollars ($750.00) per

month, not the One-Thousand Dollar ($1,000.00) per month rent that had been advertised in

writing in the marketing materials which Ponzi Scheme Defendants used to fraudulently induce Plaintiffs Peter Green and Lesley Green to purchase the property.  Plaintiffs Peter Green and Lesley Green, despite terminating Defendant Metro Property Management, LLC, only obtained the lease to the property after significant tortious interference by Ponzi Scheme Defendants, who deliberately contacted and instructed Plaintiffs Peter Green's and Lesley Green's tenants that the new property management company hired by Plaintiffs Peter Green and Lesley Green was a scam and not to cooperate or talk to that company nor to provide the lease.  This was done to further conceal the Ponzi Scheme fraud and to conceal the actual lease to the property, which Ponzi Scheme Defendants had withheld from Plaintiffs Peter Green and Lesley Green.  See Affidavits of Cantrell Wilson-Barney and Jason Barney, attached as Exhibit GGG.

193.    The home at 18013 Indiana remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiffs Peter Green and Lesley Green knew nothing of this because they were never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiffs Peter Green and Lesley Green to purchase the home.

194.    Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Peter Green and Lesley Green, there was never a tenant of the property who paid One Thousand Dollars ($1,000.00) per month rent.  Clearly, the phony rent payments were paid by Ponzi Scheme Defendants to Plaintiffs Peter Green and Lesley Green at the beginning in order to fool Plaintiffs Peter Green and Lesley Green into believing that the house was habitable, tenanted, and earning a high monthly return.

195.    Despite never refurbishing the property in the first place contrary to their

fraudulent, material  representations, Ponzi Scheme Defendants charged Plaintiffs Peter Green and Lesley Green Eighty Dollars ($80.00) for an unspecified, alleged repair.  However, because Ponzi Scheme Defendants never refurbished the property as claimed, never managed any repairs on this property, Plaintiffs Peter Green and Lesley Green were forced to pay at least Three-Thousand Six-Hundred Forty-One Dollars and Twenty-Five Cents ($3,641.25) for repairs to remedy the deficiencies on the property.  A preliminary urgent repair list is attached as, "Exhibit HHH."

196.    On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Peter Green and Lesley Green Seven-Hundred Fifty-Five Dollars ($755.00) in management fees for the property, despite the absolute lack of management of the property whatsoever, in addition to other fees. Ponzi Scheme Defendants, to date, continue to illegally withhold and collect interest on the security deposit on the property in the amount of Seven-Hundred Fifty Dollars ($750.00), despite written promises to transfer said security deposit to the property management company hired Plaintiffs Peter Green and Lesley Green to manage the property after they terminated Defendant Metro Property Management Group, LLC.

### The 14846 Washburn House

197.    Ponzi Scheme Defendants marketed a home located at 14846 Washburn Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiff Said Fadel a/k/a Saeed Fadhl, using a document entitled, "Property Information," attached as "Exhibit III."  The "Property Information" document was created by Defendant Metro Property Group.

198.    The Property Information document stated that the home at this address is

"Currently rented to 2 pre-screened, up to date tenants for $1,000 ($500 each) per month" and guaranteed the buyer of this home, "Gross yearly income [of] $12,000," "Net annual rent roll [of] **$9,100**," and "Net Yield = **18.4%**." *Exhibit III*.

199.    The Property Information document for this home noted several significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants.  *Exhibit III*.

200.    Ponzi Scheme Defendants also informed Plaintiff Said Fadel a/k/a Saeed Fadhl that the property was already occupied by two (2) tenants who had signed, executed lease to the property, which specified a rent of One Thousand Dollars ($1,000.00) (and he was later presented with a copy of said lease, which turned out to be fraudulent and forged).

201.    Based on the documents and information presented to Plaintiff Said Fadel a/k/a Saeed Fadhl by Ponzi Scheme Defendants, as described *supra*, Plaintiff Said Fadel a/k/a Saeed Fadhl purchased at 14846 Washburn Street property from Ponzi Scheme Defendants in October 2011 for a purchase price of Forty-Seven Thousand Five-Hundred Dollars ($47,500.00).  On that same date, and as part of the closing on the property, Plaintiff Said Fadel a/k/a Saeed Fadhl also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit JJJ."

202.    In February 2012, Plaintiff Said Fadel a/k/a Saeed Fadhl was informed by Ponzi Scheme Defendants that the tenants in the lower unit of this property had simply left.  Ponzi Scheme Defendants never re-let the unit, in direct contravention of their contractual duties to Plaintiff Said Fadel a/k/a Saeed Fadhl, and it has sat empty since then and to date.

203.    Ponzi Scheme Defendants repeatedly declined to give Plaintiff Said Fadel a/k/a Saeed Fadhl copies of the leases for the property, despite repeated requests from Plaintiff Said

Fadel a/k/a Saeed Fadhl for copies of said leases from Ponzi Scheme Defendants.  Plaintiff Said Fadel a/k/a Saeed Fadhl had to obtain copies of said leases from a third party.

204.    When Plaintiff Said Fadel a/k/a Saeed Fadhl finally obtained copies of the leases for the property, the real tenants of the property were long gone, and it is virtually impossible to track them down.  Ponzi Scheme Defendants rely on these "disappearances" and/or fake and fraudulent "evictions" to continue to perpetrate their Ponzi scheme fraud and conceal it from property owners, including Plaintiffs.

205.    However, Defendant Tarek M. Baydoun filed eviction documents against a party named, "Natoshia Harris," who is neither named nor listed on either of the leases (which bear the tenant names, "Bennie Davidson," and "Taylor McMillian"), which makes it likely that she was the real resident and tenant of the property and that the leases were forged by Ponzi Scheme Defendants, as is the case with every other property listed and described in the instant Complaint.  See eviction documents attached, as "Exhibit KKK."  See leases for this property attached as, "Exhibit LLL."

206.    In May 2012, Ponzi Scheme Defendants charged Plaintiff Said Fadel a/k/a Saeed Fadhl a "Court fee" of Fifty-Three Dollars and Fifty Cents ($53.50) for "Late tenant payments." No other explanation was offered.

207.    In July 2012, Ponzi Scheme Defendants informed Plaintiff Said Fadel a/k/a Saeed Fadhl that the tenants failed to make rental payments and that an action for eviction would be started by Defendant Tarek Baydoun and his "Meridian Law Group."

208.    In August 2012, Ponzi Scheme Defendants informed Plaintiff Said Fadel a/k/a Saeed Fadhl that Defendant Tarek Baydoun and his "Meridian Law Group" had begun an action for eviction.

209.     In October 2012, a year from his original purchase of the home (which is the typical pattern in Ponzi Scheme Defendants' fraudulent scheme), Ponzi Scheme Defendants informed Plaintiff Said Fadel a/k/a Saeed Fadhl that the eviction was completed and that the property was empty.

210.     The home at 14846 Washburn remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiff Said Fadel a/k/a Saeed Fadhl knew nothing of this because he was never informed of any of this by Ponzi Scheme Defendants. Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiff Said Fadel a/k/a Saeed Fadhl to purchase the home.

211.     Despite not performing any of the required repairs to the property, Ponzi Scheme Defendants had the gall to charge Plaintiff Said Fadel a/k/a Saeed Fadhl Two-Thousand Twenty-Six Dollars ($2,026.00) for alleged repairs performed on the property and to illegally withhold the security deposit of Five-Hundred Dollars ($500.00), which an alleged tenant of the property allegedly paid Ponzi Scheme Defendants.   To date, Ponzi Scheme Defendants have illegally refused to return the Five-Hundred Dollar ($500.00) "security deposit," allegedly paid by the fictional, non-existent tenant of the property.  In one e-mail to Plaintiff Said Fadel, Ponzi Scheme Defendants claimed they applied the Five-Hundred Dollar ($500.00) security deposit to a repair, which was a lie, as there have been no repairs to the property, and it is uninhabitable and in complete disrepair.  Moreover, again, Ponzi Scheme Defendants fraudulently guaranteed and represented that the property had been completely refurbished and repaired prior to Plaintiff Said Fadel's purchase of the property.

212.    On top of all of this, Ponzi Scheme Defendants charged Plaintiff Said Fadel a/k/a Saeed Fadhl several hundred dollars in management fees for the property, despite the absolute lack of management of the property whatsoever, in addition to other fees.

## The 5290 Balfour House

213.    Ponzi Scheme Defendants marketed a home located at 5290 Balfour Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Warren Grover and Margaret Joyce Grover, using a document entitled, "Property Information," attached as "Exhibit MMM."  The "Property Information" document was created by Defendant Metro Property Group.

214.    The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $1,050 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $12,600," "Net annual rent roll [of] **$8,250**," and "Net Yield = **17%**." *Exhibit MMM*.

215.    The Property Information document for this home noted several significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants. *Exhibit MMM*.  And Plaintiffs Warren Grover and Margaret Joyce Grover were also fraudulently told  in writing that the property was "Section 8" approved with a Section 8 tenant, which was false.

216.    Ponzi Scheme Defendants also informed Plaintiffs Warren Grover and Margaret Joyce Grover that the property was already occupied by a tenant who had a signed, executed lease to the property, which specified a rent of One-Thousand Fifty Dollars ($1,050.00).  Despite Plaintiff Warren Grover's repeated requests to see the lease for the property, Ponzi Scheme Defendants repeatedly declined and/or refused to give him a copy.  Plaintiffs Warren Grover and

Margaret Joyce Grover only obtained a copy of the real lease for the property after terminating Defendant Metro Property Management, LLC from the management of the property, hiring a new property manager, and sending that property manager to Defendant Metro Property Management, LLC's offices to obtain the lease. Ponzi Scheme Defendants repeatedly refused to give Plaintiffs Warren Grover and Margaret Joyce Grover and/or their new management company keys to the property.

217. Based on the documents and information presented to Warren Grover and Margaret Joyce Grover by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Warren Grover and Margaret Joyce Grover purchased the 5290 Balfour Street property from Defendant Global Power Equities, LLC on September 30, 2011 for a purchase price of Forty-Five Thousand Dollars ($45,000.00). On that same date, and as part of the closing on the property, Plaintiffs Warren Grover and Margaret Joyce Grover also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit NNN."

218. As noted, *supra*, Ponzi Scheme Defendants never gave Plaintiffs Warren Grover and Margaret Joyce Grover a copy of the lease for the property until after Warren Grover and Margaret Joyce Grover terminated Defendant Metro Property Management, LLC from the management of the property and hired a new property manager who personally went to Defendant Metro Property Management, LLC's offices and demanded a copy of the lease for the property. To that point, Plaintiff Warren Grover repeatedly requested a copy of the lease from Ponzi Scheme Defendants to no avail, despite repeated promises and excuses from Ponzi Scheme Defendants. In response to Plaintiff Warren Grover's repeated requests for this document and

explanations regarding the varying rental amounts, Defendant Sameer Beydoun threatened Plaintiff Warren Grover in an e-mail message that he would instruct Defendant Sameer Beydoun's attorney to "crush" him "in court. You would have to fly across the world just to loose [*sic*] in court." This was typical of the tone and nature of Defendant Sameer Beydoun's typical intimidation tactics against property owners who asked for basic documents to which they were legally entitled and explanations regarding glaring rent discrepancies.

219.    When Plaintiffs Warren Grover and Margaret Joyce Grover finally obtained the real lease for the property via their new property manager, attached as "Exhibit OOO," after terminating Defendant Metro Property Management LLC, Plaintiffs Warren Grover and Margaret Joyce Grover immediately noted that rent for the property, pursuant to the lease, was only Seven-Hundred Dollars ($700.00) per month, not the One-Thousand Fifty Dollar ($1,050.00) per month rent that had been advertised in writing in the marketing materials which Ponzi Scheme Defendants used to fraudulently induce Warren Grover and Margaret Joyce Grover to purchase the property.  In fact, the tenant, Jewelean Nesbitt had been living in the property to that point for a year pursuant to the Seven-Hundred Dollar ($700.00) per month lease, while Ponzi Scheme Defendants paid Plaintiffs Warren Grover and Margaret Joyce Grover One-Thousand Fifty Dollar ($1,050.00) per month rent for several months to conceal the scheme. Plaintiffs Warren Grover and Margaret Joyce Grover also noted that the lease for the property did not begin until March 1, 2012, several months after the September 21, 2011 date that they purchased the property, based on Ponzi Scheme Defendant's fraudulent claim that the property was already leased and tenanted.  It appears that there was no tenant leasing and/or living on the premises prior to the March 1, 2012 lease date.

220.     The home at 5290 Balfour remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover knew nothing of this because they were never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the home.  In fact, to date, the sewer backs up repeatedly and there are other significant problems which would not exist if the property had truly been refurbished as claimed by Ponzi Scheme Defendants in order to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property.

221.     Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Warren Grover and Margaret Joyce Grover, there was never a tenant of the property who paid One-Thousand Fifty Dollars ($1,050.00) per month rent.  Clearly, the phony rent payments were paid by Ponzi Scheme Defendants to Plaintiffs Warren Grover and Margaret Joyce Grover at the beginning in order to fool Plaintiffs Warren Grover and Margaret Joyce Grover into believing that the house was habitable, tenanted, and earning a high monthly return.

222.     Despite never refurbishing the property in the first place contrary to their fraudulent, material  representations, Ponzi Scheme Defendants sent Plaintiffs Warren Grover and Margaret Joyce Grover a proposed invoice for extensive repairs totaling Two-Thousand Four-Hundred Seventy-One Dollars ($2,471.00) of which they asked Plaintiffs Warren Grover and Margaret Joyce Grover to pay Four-Hundred Ninety-Six Dollars ($496.00).  Had Ponzi Scheme Defendants refurbished the property as they had fraudulently claimed in writing, all of

these repairs would have been already performed on this property, prior to the property's purchase by Plaintiffs Warren Grover and Margaret Joyce Grover.

223.     On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Warren Grover and Margaret Joyce Grover Nine-Hundred Eighty Dollars ($980.00) in management fees for the property, despite the absolute lack of management of the property whatsoever, in addition to other fees. Ponzi Scheme Defendants also charged Plaintiffs Warren Grover and Margaret Joyce Grover Eighty-Four Dollars ($84.00) for alleged repairs on the property.  Moreover, Ponzi Scheme Defendants illegally withheld and collected interest on One-Third (1/3) of the rental income earned and owed to them on this property, claiming that they were withholding it for taxes until Plaintiffs Warren Grover and Margaret Joyce Grover filled in a tax form, which Plaintiffs Warren Grover and Margaret Joyce Grover had already done and which Ponzi Scheme Defendants had acknowledged they were aware of.  Further, Ponzi Scheme Defendants illegally withheld and collected interest on One-Thousand Dollars ($1,000.00) of the rental income earned and owed to them on this property until and unless Plaintiffs Warren Grover and Margaret Joyce Grover agreed to renew and sign another property management agreement for the property with Defendant Metro Property Management, LLC, even though the previously executed management agreement was still current and Plaintiffs Warren Grover and Margaret Joyce Grover had no desire to renew their "relationship" with Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover declined to renew and sign said property management agreement.

**The 18940 Sawyer House**

224.     Ponzi Scheme Defendants marketed a home located at 18940 Sawyer Street in

the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Warren Grover and

Margaret Joyce Grover, using a document entitled, "Property Information," attached as "Exhibit

PPP." The "Property Information" document was created by Defendant Metro Property Group.

225.   The Property Information document stated that the home at this address is

"Currently rented to a pre-screened, up to date tenant for $750 per month" and guaranteed the

buyer of this home, "Gross yearly income [of] $9,000," "Net annual rent roll [of] **$5,900**," and

"Net Yield = **16.2%**." *Exhibit PPP*.

226.   The Property Information document for this home noted several significant

repairs to the home that had allegedly been performed by Ponzi Scheme Defendants. *Exhibit*

*PPP*. And Plaintiffs Warren Grover and Margaret Joyce Grover were also fraudulently told in

writing that the property was "Section 8" approved with a Section 8 tenant, which was false.

227.   Ponzi Scheme Defendants also informed Plaintiffs Warren Grover and Margaret

Joyce Grover that the property was already occupied by a tenant who had a signed, executed

lease to the property, which specified a rent of Seven-Hundred Fifty Dollars ($750.00). Despite

Plaintiff Warren Grover's repeated requests to see the lease for the property, Ponzi Scheme

Defendants repeatedly declined and/or refused to give him a copy. Plaintiffs Warren Grover and

Margaret Joyce Grover never obtained a copy of the lease for this property from Ponzi Scheme

Defendants because no such lease existed.

228.   Based on the documents and information presented to Warren Grover and

Margaret Joyce Grover by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Warren

Grover and Margaret Joyce Grover purchased the 18940 Sawyer Street property from Defendant

Global Power Equities, LLC on November 9, 2011 for a purchase price of Twenty-Seven

Thousand Five-Hundred Dollars ($27,500.00). On that same date, and as part of the closing on

the property, Plaintiffs Warren Grover and Margaret Joyce Grover also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit QQQ."

229.     As noted, *supra*, Ponzi Scheme Defendants never gave Plaintiffs Warren Grover and Margaret Joyce Grover a copy of the lease for the property, despite Plaintiff Warren Grover's repeated requests for a copy of the lease from Ponzi Scheme Defendants to no avail, despite repeated promises and excuses from Ponzi Scheme Defendants.  Ponzi Scheme Defendants repeatedly refused to give Plaintiffs Warren Grover and Margaret Joyce Grover and/or their new management company keys to the property.  In response to Plaintiff Warren Grover's repeated requests for this document and explanations regarding the varying rental amounts, Defendant Sameer Beydoun threatened Plaintiff Warren Grover in an e-mail message that he would instruct Defendant Sameer Beydoun's attorney to "crush" him "in court.  You would have to fly across the world just to loose [*sic*] in court."  This was typical of the tone and nature of Defendant Sameer Beydoun's typical intimidation tactics against property owners who asked for basic documents to which they were legally entitled and explanations regarding glaring rent discrepancies.

230.     Eventually, Plaintiffs Warren Grover and Margaret Joyce Grover learned, after terminating Defendant Metro Property Management LLC from the management of the property, that not only was there no executed lease for the property, but that the rent for the property paid by the tenant who occupied it was only Six-Hundred Dollars ($600.00) per month, not the Seven-Hundred Fifty Dollar ($750.00) per month rent that had been advertised in writing in the marketing materials which Ponzi Scheme Defendants used to fraudulently induce Warren Grover

and Margaret Joyce Grover to purchase the property.  In fact, the tenant ultimately moved out in September 2012, because Ponzi Scheme Defendants refused to make repairs, and the property was in such utter disrepair and was uninhabitable, contrary to the fully refurbished condition which Ponzi Scheme Defendants fraudulently represented to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property.  And, again, even when the tenant was leasing the premises, the tenant was only paying Six-Hundred Dollars ($600.00) per month rent, while Ponzi Scheme Defendants paid Plaintiffs Warren Grover and Margaret Joyce Grover Seven-Hundred Fifty Dollar ($750.00) per month rent for several months to conceal the scheme.

231.    The home at 18940 Sawyer remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover knew nothing of this because they were never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the home.  Plaintiffs Warren Grover and Margaret Joyce Grover would have to pay at least Thirteen-Thousand Five-Hundred Twenty-Five Dollars ($13,525.00) to make repairs to the property to make it habitable, a cost they would not have to expend if the property had truly been refurbished as claimed by Ponzi Scheme Defendants in order to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property.  After the tenant moved out of the home, Ponzi Scheme Defendants used the home as a trash dump and dumped their trash in it, adding to the property damage and the repair costs which Plaintiffs Warren Grover and Margaret Joyce Grover would have to pay to clean up and refurbish the home.

232.     Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Warren Grover and Margaret Joyce Grover, there was never a tenant of the property who paid Seven-Hundred Fifty Dollars ($750.00) per month rent.  Clearly, the phony rent payments were paid by Ponzi Scheme Defendants to Plaintiffs Warren Grover and Margaret Joyce Grover at the beginning in order to fool Plaintiffs Warren Grover and Margaret Joyce Grover into believing that the house was habitable, tenanted, and earning a high monthly return.

233.     Ponzi Scheme Defendants fraudulently represented this property to Plaintiffs Warren Grover and Margaret Joyce Grover as a brick frame home, in order to fraudulently induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property.  Long after the purchase, they discovered that the home was not a brick frame home (meaning it is brick with cladding), but, in fact, the frame is made of something else, making the home much cheaper and less valuable.

234.     On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Warren Grover and Margaret Joyce Grover Six-Hundred Fifty-Seven Dollars ($657.00) in management fees for the property, despite the absolute lack of management of the property whatsoever. Moreover, Ponzi Scheme Defendants illegally withheld and collected interest on One-Third (1/3) of the rental income earned and owed to them on this property, claiming that they were withholding it for taxes until Plaintiffs Warren Grover and Margaret Joyce Grover filled in a tax form, which Plaintiffs Warren Grover and Margaret Joyce Grover had already done and which Ponzi Scheme Defendants had acknowledged they were aware of.  Further, Ponzi Scheme Defendants illegally withheld and collected interest on One-Thousand Dollars ($1,000.00) of the rental income earned and owed to them on this property until and unless Plaintiffs Warren Grover and Margaret Joyce

Grover agreed to renew and sign another property management agreement for the property with Defendant Metro Property Management, LLC, even though the previously executed management agreement was still current and Plaintiffs Warren Grover and Margaret Joyce Grover had no desire to renew their "relationship" with Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover declined to renew and sign said property management agreement.

## The 7666 Brace House

235.    Ponzi Scheme Defendants marketed a home located at 7666 Brace Street in the City of Detroit, County of Wayne, State of Michigan, to Plaintiffs Warren Grover and Margaret Joyce Grover, using a document entitled, "Property Information," attached as "Exhibit RRR."  The "Property Information" document was created by Defendant Metro Property Group.

236.    The Property Information document stated that the home at this address is "Currently rented to a pre-screened, up to date tenant for $775 per month" and guaranteed the buyer of this home, "Gross yearly income [of] $9,300," "Net annual rent roll [of] **$5,870**," and "Net Yield = **16.1%**."  *Exhibit RRR*.

237.    The Property Information document for this home noted several significant repairs to the home that had allegedly been performed by Ponzi Scheme Defendants.  *Exhibit RRR*.  And Plaintiffs Warren Grover and Margaret Joyce Grover were also fraudulently told  in writing that the property was "Section 8" approved with a Section 8 tenant, which was false.

238.    Ponzi Scheme Defendants also informed Plaintiffs Warren Grover and Margaret Joyce Grover that the property was already occupied by a tenant who had a signed, executed lease to the property, which specified a rent of Seven-Hundred Dollars ($700.00).  Despite Plaintiff Warren Grover's repeated requests to see the lease for the property, Ponzi Scheme

Defendants repeatedly declined and/or refused to give him a copy.  Plaintiffs Warren Grover and Margaret Joyce Grover never obtained a copy of the lease for this property from Ponzi Scheme Defendants because no such lease existed.

239.    Based on the documents and information presented to Warren Grover and Margaret Joyce Grover by Ponzi Scheme Defendants, as described *supra*, Plaintiffs Warren Grover and Margaret Joyce Grover purchased the 7666 Brace Street property from Defendant Global Power Equities, LLC on September 30, 2011 for a purchase price of Thirty Thousand Dollars ($30,000.00).  On that same date, and as part of the closing on the property, Plaintiffs Warren Grover and Margaret Joyce Grover also signed a "Management Agreement" with Defendant Metro Property Management, LLC, which was also signed by Defendant Sameer Beydoun on behalf of Defendant Metro Property Management, LLC, attached as "Exhibit SSS."

240.    As noted, *supra*, Ponzi Scheme Defendants never gave Plaintiffs Warren Grover and Margaret Joyce Grover a copy of the lease for the property, despite Plaintiff Warren Grover's repeated requests for a copy of the lease from Ponzi Scheme Defendants to no avail, despite repeated promises and excuses from Ponzi Scheme Defendants.  Ponzi Scheme Defendants also repeatedly refused to give Plaintiffs Warren Grover and Joyce Margaret Grover copies of alleged evictions of tenants from the property, despite Plaintiff Warren Grover's repeated requests, as said alleged evictions appeared to be fake and fictional, designed to conceal the lack of a tenant on the property.  Defendant Tarek M. Baydoun repeatedly declined to provide Plaintiff Warren Grover with copies of and information regarding the alleged evictions, despite Plaintiff Warren Grover's repeated requests for said documents and information.  Ponzi Scheme Defendants repeatedly refused to give Plaintiffs Warren Grover and Margaret Joyce Grover and/or their new management company keys to the property.  In response to Plaintiff

Warren Grover's repeated requests for these documents and explanations regarding the varying rental amounts, Defendant Sameer Beydoun threatened Plaintiff Warren Grover in an e-mail message that he would instruct Defendant Sameer Beydoun's attorney to "crush" him "in court. You would have to fly across the world just to loose [*sic*] in court." This was typical of the tone and nature of Defendant Sameer Beydoun's typical intimidation tactics against property owners who asked for basic documents to which they were legally entitled and explanations regarding glaring rent discrepancies.

241.  Eventually, Plaintiffs Warren Grover and Margaret Joyce Grover learned, after terminating Defendant Metro Property Management LLC from the management of the property, that not only was there no executed lease for the property, but that the rent for the property paid by the tenant who occupied it—if in fact there was a tenant, and the evictions of said alleged tenant appear to be fictional—was only Six-Hundred Twenty-Five Dollars ($625.00) per month, not the Seven-Hundred Dollar ($700.00) per month rent that had been advertised in writing in the marketing materials which Ponzi Scheme Defendants used to fraudulently induce Warren Grover and Margaret Joyce Grover to purchase the property. In fact, Ponzi Scheme Defendants refused to make repairs to the property, which was in such utter disrepair that it was uninhabitable, contrary to the fully refurbished condition which Ponzi Scheme Defendants fraudulently represented to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property. And, again, even if and when the tenant was leasing the premises, the tenant was only paying Six-Hundred Dollars ($625.00) per month rent, while Ponzi Scheme Defendants paid Plaintiffs Warren Grover and Margaret Joyce Grover Seven-Hundred Dollar ($700.00) per month rent for several months to conceal the scheme.

242.     The home at 7666 Brace remained in absolute disrepair during the entire time that it was "managed" by Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover knew nothing of this because they were never informed of any of this by Ponzi Scheme Defendants.  Photos of the home show that the home was never refurbished, contrary to the explicit written and verbal statements by Ponzi Scheme Defendants made to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the home.  Plaintiffs Warren Grover and Margaret Joyce Grover ultimately paid a total of Seven-Thousand Three-Hundred Fifty Dollars ($7,350.00) to make repairs to the property to make it habitable, a cost they would not have to expend if the property had truly been refurbished as claimed by Ponzi Scheme Defendants in order to induce Plaintiffs Warren Grover and Margaret Joyce Grover to purchase the property. Moreover, Ponzi Scheme Defendants charged Plaintiffs Warren Grover and Margaret Joyce Grover Three-Thousand Eight-Hundred Sixty-Five Dollars ($3,865.00) to completely repair the premises.  But the repairs were not done, so Plaintiffs Warren Grover and Margaret Joyce Grover had to expend an additional Three-Thousand Four-Hundred Eighty-Five Dollars ($3,485.00) which they paid to third party contractors to complete the repairs.

243.     Despite fraudulent representations by Ponzi Scheme Defendants to the contrary prior to and after the sale of this property to Plaintiffs Warren Grover and Margaret Joyce Grover, there was never a tenant of the property who paid Seven-Hundred Fifty Dollars ($750.00) per month rent.  Clearly, the phony rent payments were paid by Ponzi Scheme Defendants to Plaintiffs Warren Grover and Margaret Joyce Grover at the beginning in order to fool Plaintiffs Warren Grover and Margaret Joyce Grover into believing that the house was habitable, tenanted, and earning a high monthly return.

244.    On top of all of this, Ponzi Scheme Defendants charged Plaintiffs Warren Grover and Margaret Joyce Grover Five-Hundred Two Dollars and Fifty Cents ($502.50) in management fees for the property, despite the absolute lack of management of the property whatsoever. Moreover, Ponzi Scheme Defendants illegally withheld and collected interest on One-Third (1/3) of the rental income earned and owed to them on this property, claiming that they were withholding it for taxes until Plaintiffs Warren Grover and Margaret Joyce Grover filled in a tax form, which Plaintiffs Warren Grover and Margaret Joyce Grover had already done and which Ponzi Scheme Defendants had acknowledged they were aware of.  Further, Ponzi Scheme Defendants illegally withheld and collected interest on One-Thousand Dollars ($1,000.00) of the rental income earned and owed to them on this property until and unless Plaintiffs Warren Grover and Margaret Joyce Grover agreed to renew and sign another property management agreement for the property with Defendant Metro Property Management, LLC, even though the previously executed management agreement was still current and Plaintiffs Warren Grover and Margaret Joyce Grover had no desire to renew their "relationship" with Ponzi Scheme Defendants.  Plaintiffs Warren Grover and Margaret Joyce Grover declined to renew and sign said property management agreement.


245.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including loss of investment income, thousands of dollars in governmental fines, thousands of dollars paid for repairs, thousands of dollars in confiscated security deposits, thousands of dollars in fraudulently obtained management fees, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and incurred substantial liability for attorney fees.

246.    The intentional, fraudulent conduct of Defendants was a proximate cause of the damages and injuries suffered by Plaintiffs as set forth herein.

## FIRST CLAIM FOR RELIEF
### Fraudulent Misrepresentation
### (as to all Defendants)

247.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

248.    Prior to Plaintiffs' purchases of the properties described herein, Defendants represented to Plaintiffs that the properties were currently tenanted, that the tenants were paying a specific amount of monthly rent pursuant to executed, valid leases, that the homes were Section 8 approved, that the properties were newly and fully refurbished, and that the properties would generate a specific amount of income and percentage rate of return on initial investment.

249.    In truth and in fact, the properties were either not tenanted at all, or the tenant was paying a significantly lower amount of rent per different leases than the fraudulent, forged leases given by Defendants to Plaintiffs.  In truth and in fact, the properties were not refurbished, not Section 8 approved, and were not generating the monthly rental income and percentage of return fraudulently represented by Defendants.

250.    On numerous occasions, Defendants misrepresented leases, names of tenants, amounts of rent, state of repairs of the properties, and even the evictions of said alleged tenants.

251.    Defendants knew that the representations they made were false.

252.    Defendants' representations were false at the time they made them, and they recklessly disregarded the truth of their representations.

253.    Defendants made the misrepresentations with the intentions that Plaintiffs would

rely on them by purchasing the properties, paying for repairs, paying for evictions, paying management fees, and incurring other expenses, costs, and damages.

254.    Plaintiffs reasonably relied upon Defendants' representations by purchasing the properties, paying for repairs, paying for evictions, paying management fees, and incurring other expenses, costs, and damages.

255.    Had Defendants disclosed the real state of repairs of the properties and whether they were actually habitable, the real monthly rental rates for the actual leases for the properties, the truth regarding whether or not the properties were currently tenanted, and the truth regarding whether the properties were actually Section 8 approved, Plaintiffs would never have purchased the properties from Defendants.

256.    In making the above misrepresentations to Plaintiffs, Defendants acted maliciously, willfully, and wantonly.

257.    Plaintiffs have suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants as a consequence of the fraudulent misrepresentations made by Defendants.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.    Order Defendants to repay Plaintiffs all amounts paid to Defendants by Plaintiffs;

b.    Award Plaintiffs their actual money damages in an amount no less than One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants and cancel any obligation of Plaintiffs to Defendants;

c.      Award Plaintiffs exemplary/punitive damages against Defendants in an amount not less than One Million Dollars ($1,000,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants

d.      Award Plaintiffs their costs and reasonable attorney fees incurred as a consequence of Defendants' fraudulent misrepresentations; and

e.      Order such other relief as this Honorable Court deems proper.

## SECOND CLAIM FOR RELIEF
### Fraud in the Inducement
### (as to all Defendants)

258.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

259.    Prior to Plaintiffs' purchases of the properties described herein, Defendants represented to Plaintiffs that the properties were currently tenanted, that the tenants were paying a specific amount of monthly rent pursuant to executed, valid leases, that the homes were Section 8 approved, that the properties were newly and fully refurbished, and that the properties would generate a specific amount of income and percentage rate of return on initial investment.

260.    In truth and in fact, the properties were either not tenanted at all, or the tenant was paying a significantly lower amount of rent per different leases than the fraudulent, forged leases given by Defendants to Plaintiffs.  In truth and in fact, the properties were not refurbished, not Section 8 approved, and were not generating the monthly rental income and percentage of return fraudulently represented by Defendants.

261.    On numerous occasions, Defendants misrepresented leases, names of tenants, amounts of rent, state of repairs of the properties, and even the evictions of said alleged tenants.

262.    Defendants knew that the representations they made were false.

263.    Defendants' representations were false at the time they made them, and they recklessly disregarded the truth of their representations.

264.    Defendants made the misrepresentations with the intentions that Plaintiffs would rely on them by purchasing the properties, paying for repairs, paying for evictions, paying management fees, and incurring other expenses, costs, and damages.

265.    Plaintiffs reasonably relied upon Defendants' representations by purchasing the properties, paying for repairs, paying for evictions, paying management fees, and incurring other expenses, costs, and damages.

266.    Had Defendants disclosed the real state of repairs of the properties and whether they were actually habitable, the real monthly rental rates for the actual leases for the properties, the truth regarding whether or not the properties were currently tenanted, and the truth regarding whether the properties were actually Section 8 approved, Plaintiffs would never have purchased the properties from Defendants.

267.    In making the above misrepresentations to Plaintiffs, Defendants acted maliciously, willfully, and wantonly.

268.    Plaintiffs have suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants as a consequence of the fraudulent misrepresentations made by Defendants.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.    Order Defendants to repay Plaintiffs all amounts paid to Defendants by Plaintiffs;

b.      Award Plaintiffs their actual money damages in an amount no less than One
Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs
from Ponzi Scheme Defendants and cancel any obligation of Plaintiffs to
Defendants;

c.      Award Plaintiffs exemplary/punitive damages against Defendants in an amount
not less than One Hundred Thousand Dollars ($100,000.00) per property
purchased by Plaintiffs from Ponzi Scheme Defendants;

d.      Award Plaintiffs their costs and reasonable attorney fees incurred as a
consequence of Defendants' fraudulent misrepresentations; and

e.      Order such other relief as this Honorable Court deems proper.


### THIRD CLAIM FOR RELIEF
### Breach of Contract
### (as to all Defendants)

269.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this
Complaint as though repeated herein.

270.    Per written documents and agreements, Defendants offered to sell Plaintiffs
refurbished, tenanted, guaranteed income-generating, Section 8 approved properties and to
manage those properties for Plaintiffs.  Attorney Defendants offered to conduct legitimate legal
services for those properties for Plaintiffs

271.    Per written documents and agreements, Plaintiffs purchased properties and
property management services from Defendants and paid purchased and paid for legal services
from Attorney Defendants for those properties.

272.    Defendants failed and refused to perform its duties pursuant to the written documents and agreements and Attorney Defendants' had professional and quasi-contractual duties to Plaintiffs.

273.    Plaintiffs have suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants as a consequence of Defendants' breach of contract.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.   Enter a judgment in Plaintiffs' favor and against Defendants in an amount not less than One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants, plus interest, costs, and attorney fees; and

b.   Grant such other relief as this Honorable Court deems proper.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Contract/Quasi-Contract/Unjust Enrichment
### (as to all Defendants)

274.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

275.    Plaintiffs conferred a benefit upon Defendants by paying Defendants hundreds of thousands of dollars for worthless, uninhabitable and/or untenanted, unrepaired, heavily distressed properties which were not Section 8 approved and by paying Attorney Defendants hundreds of dollars for fraudulent evictions and fictional, fabricated legal work.

276.     Despite receiving hundreds of thousands of dollars from Plaintiffs, Defendants knowingly and purposefully failed and refused to provide refurbished, tenanted, Section 8 approved properties and management of those properties, and Attorney Defendants engaged in fraudulent evictions and fictional, fabricated legal work.

277.     Defendants have been unjustly enriched to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

        a.   Enter a judgment in Plaintiffs' favor and against Defendants in an amount deemed appropriate, plus interest, costs, and attorney fees; and

        b.   Grant such other relief as this Honorable Court deems proper.

**FIFTH CLAIM FOR RELIEF**
**Alter Ego/Piercing the Corporate Veil**

278.     Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

279.     Defendant Sameer Beydoun is a Member and Chief Executive Officer of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

280.     Defendant Ali Beydoun is a Member, Chief Operating Officer, and "Executive Director" of Defendant Metro Property Group, LLC.  Upon information and belief, he is also one of the few Members of Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

281.     Defendant David Makki is the Vice President of Real Estate Services for

Defendant Metro Property Group, LLC, and a resident of the City of Dearborn, County of Wayne, State of Michigan.  Upon information and belief, he is a Member of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

282.   Collectively, Defendants Sameer Beydoun, Ali Beydoun, and David Makki are the sole owners, officers, and directors of all four companies, Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

283.   Defendants Sameer Beydoun, Ali Beydoun, and David Makki conspired together and exercised dominion and control over the finances, business practices, and policies of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, to the point that Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC had no separate existence from Defendants Sameer Beydoun, Ali Beydoun, and David Makki.

284.   Defendants Sameer Beydoun, Ali Beydoun, and David Makki conspired together and comingled the identities, finances, business practices, and policies of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, to the point that Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC were not, in actuality separate companies and their alleged "separation" was fictional and fraudulent.

285.   Defendants Sameer Beydoun, Ali Beydoun, and David Makki failed to maintain and observe separate internal and legal formalities from Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

286.   Defendants Sameer Beydoun, Ali Beydoun, and David Makki failed to maintain

and observe separate internal and legal formalities between the various Defendant companies, Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC.

287. Defendants Sameer Beydoun, Ali Beydoun, and David Makki used Defendant companies, Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, in concert as a mere instrumentality to commit wrongdoing.

288. Recognition of the corporate fiction under these circumstances would result in substantial injustice.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a. Find and declare that Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, are mere alter-egos of Defendants Sameer Beydoun, Ali Beydoun, and David Makki;

b. Pierce the corporate veils of Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC and enter a judgment finding Defendants Sameer Beydoun, Ali Beydoun, and David Makki personally liable for any money judgment entered in favor of Plaintiffs, which may be satisfied by the personal assets of Defendants Sameer Beydoun, Ali Beydoun, and David Makki;

c. Award Plaintiffs their costs and reasonable attorney fees incurred herein;  and

d. Grant such other relief as this Honorable Court deems proper.

## SIXTH CLAIM FOR RELIEF
### Corporate Officer Responsibility/Liability

289.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

290.    Although Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike Alaweih, and Chris Picciurro are or were, at all times relevant, individually Members and/or officers of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, they may and should be held personally responsible and liable for their fraudulent, negligent, and/or egregious actions, whether perpetrated under the color of their employment, Membership, or office with any of Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, and piercing the corporate veil is not necessary to do so.

291.    Michigan law is quite clear that corporate officials can be held personally liable for their egregious acts.

> Michigan law is well settled that a plaintiff may pursue an action against a corporate official in his personal capacity when the plaintiff alleges that the official's own tortious conduct harmed the plaintiff. . . .

> Michigan law has long provided that corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or the corporation's benefit. Moreover, as Michigan courts have recognized, "[o]fficers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully."

*Department of Agriculture and Michigan Apple Committee v. Appletree Marketing, L.L.C., and Steven Kropf*, 485 Mich. 1, 17-19, 779 N.W.2d 237 (2010), citing *Allen v. Morris Bldg. Co.*, 360 Mich. 214, 218, 103 N.W.2d 491 (1960) and quoting *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich.App. 514, 519, 742 N.W.2d 140 (2007).

292.    Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike

Alaweih, and Chris Picciurro committed individual tortious acts against Plaintiffs, and their tortious acts harmed Plaintiffs.

293.    Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike Alaweih, and Chris Picciurro personally caused Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC to act unlawfully.

294.    Therefore, Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike Alaweih, and Chris Picciurro must be held personally liable for the tortious acts they committed against Plaintiffs, the unlawful acts in which they caused Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC to engage, and for the harm those tortious and unlawful acts caused Plaintiffs.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a. Find and declare that Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike Alaweih, and Chris Picciurro engaged in tortious acts against Plaintiffs and that they caused Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, and Apex Equities, LLC, to engage in unlawful acts against Plaintiffs, causing Plaintiffs harm;

b. Find and declare that Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike Alaweih, and Chris Picciurro are personally responsible and liable for the tortious acts against Plaintiffs and those unlawful acts in which they caused Defendants Metro Property Group, LLC, Metro Property Management, LLC,

Global Power Equities, LLC, and Apex Equities, LLC to engage against

Plaintiffs, causing Plaintiffs harm;

c.   Enter a judgment finding Defendants Sameer Beydoun, Ali Beydoun, David

Makki, Mike Alaweih, and Chris Picciurro personally liable for any money

judgment entered in favor of Plaintiffs, which may be satisfied by the personal

assets of Defendants Sameer Beydoun, Ali Beydoun, David Makki, Mike

Alaweih, and Chris Picciurro;

d.   Award Plaintiffs their costs and reasonable attorney fees incurred herein;  and

e.   Grant such other relief as this Honorable Court deems proper.


### SEVENTH CLAIM FOR RELIEF
### Alter Ego/Piercing the Corporate Veil
### (as to Attorney Defendants)

295.   Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

296.   Upon information and belief, Defendants James Allen and John Allen are the sole

Members of Defendant Allen Brothers.  Upon information and belief, Defendant Tarek M.

Baydoun is the sole Member of Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group.

297.   Defendants James Allen, John Allen, and Allen Brothers knew of, sanctioned,

caused, and conspired with the fraudulent actions of Defendants Tarek M. Baydoun and

Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, as at all times relevant and to date,

Defendants Tarek M. Baydoun and Baydoun Law Group, PLLC d/b/a/ The Meridian Law

Group, maintained an "Of Counsel" relationship with Defendant Allen Brothers and is housed

within the Detroit offices of and utilized (and, to date, continues to utilize) the resources and e-

mail address of Defendant Allen Brothers.  Defendants James Allen, John Allen, and Allen Brothers conspired to conceal this relationship and cover up the fraudulent, fictional legal work of Defendants Tarek M. Baydoun and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group by removing him from the Allen Brothers website, despite the fact that to date, the "Of Counsel" relationship between these parties remains intact.

298.    Defendants John Allen, James Allen, and Tarek M. Baydoun conspired together and exercised dominion and control over the finances, business practices, and policies of Defendant Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, and Allen Brothers had and has no separate existence from Defendants John Allen, James Allen, Tarek M. Baydoun and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group.

299.    Defendants John Allen, James Allen, and Tarek M. Baydoun conspired together and comingled the identities, finances, business practices, and policies of Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, to the point that Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group were not, in actuality separate companies and their alleged "separation" was fictional and fraudulent.

300.    Defendants John Allen, James Allen, and Tarek M. Baydoun failed to maintain and observe separate internal and legal formalities from Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group.

301.    Defendants John Allen, James Allen, and Tarek M. Baydoun failed to maintain and observe separate internal and legal formalities between the various Defendant companies, Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group.

302.    Defendants John Allen, James Allen, and Tarek M. Baydoun used

Defendant companies, Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, in concert as a mere instrumentality to commit wrongdoing.

303.   Recognition of the corporate fiction under these circumstances would result in substantial injustice.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.   Find and declare that Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, are mere alter-egos of Defendants James Allen, John Allen, and Tarek M. Baydoun;

b.   Pierce the corporate veils of Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group and enter a judgment finding Defendants John Allen, James Allen, and Tarek M. Baydoun personally liable for any money judgment entered in favor of Plaintiffs, which may be satisfied by the personal assets of Defendants John Allen, James Allen, and Tarek M. Baydoun;

c.   Award Plaintiffs their costs and reasonable attorney fees incurred herein;  and

d.   Grant such other relief as this Honorable Court deems proper.

**EIGHTH CLAIM FOR RELIEF**
**Corporate Officer Responsibility/Liability**
**(as to Attorney Defendants)**

304.   Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

305.    Although Defendants John Allen, James Allen and Tarek M. Baydoun are individually Members and/or officers of Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, they may and should be held personally responsible and liable for their fraudulent, negligent, and/or egregious actions, whether perpetrated under the color of their employment, Membership, or office with Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, and piercing the corporate veil is not necessary to do so.

306.    Michigan law is quite clear that corporate officials can be held personally liable for their egregious acts.

> Michigan law is well settled that a plaintiff may pursue an action against a corporate official in his personal capacity when the plaintiff alleges that the official's own tortious conduct harmed the plaintiff. . . .

> Michigan law has long provided that corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or the corporation's benefit. Moreover, as Michigan courts have recognized, "[o]fficers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully."

*Department of Agriculture and Michigan Apple Committee v. Appletree Marketing, L.L.C., and Steven Kropf*, 485 Mich. 1, 17-19, 779 N.W.2d 237 (2010), citing *Allen v. Morris Bldg. Co*., 360 Mich. 214, 218, 103 N.W.2d 491 (1960) and quoting *Livonia Bldg. Materials Co. v. Harrison Constr. Co*., 276 Mich.App. 514, 519, 742 N.W.2d 140 (2007).

307.    Defendants John Allen, James Allen, and Tarek M. Baydoun committed individual tortious acts against Plaintiffs, and their tortious acts harmed Plaintiffs.

308.    Defendants John Allen, James Allen, and Tarek M. Baydoun personally caused Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group to act unlawfully.

309.    Therefore, Defendants John Allen, James Allen, and Tarek M. Baydoun must be held personally liable for the tortious acts they committed against Plaintiffs, the unlawful acts in which they caused Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group to engage, and for the harm those tortious and unlawful acts caused Plaintiffs.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.    Find and declare that Defendants John Allen, James Allen, and Tarek M. Baydoun engaged in tortious acts against Plaintiffs and that they caused Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group, to engage in unlawful acts against Plaintiffs, causing Plaintiffs harm;

b.    Find and declare that Defendants John Allen, James Allen, and Tarek M. Baydoun are personally responsible and liable for the tortious acts against Plaintiffs and those unlawful acts in which they caused Defendants Allen Brothers and Baydoun Law Group, PLLC d/b/a/ The Meridian Law Group to engage against Plaintiffs, causing Plaintiffs harm;

c.    Enter a judgment finding Defendants John Allen, James Allen, and Tarek M. Baydoun personally liable for any money judgment entered in favor of Plaintiffs, which may be satisfied by the personal assets of Defendants John Allen, James Allen, and Tarek M. Baydoun;

d.    Award Plaintiffs their costs and reasonable attorney fees incurred herein;  and

e.    Grant such other relief as this Honorable Court deems proper.

## NINTH CLAIM FOR RELIEF
### Common Law Conversion
### (as to all Defendants)

310.   Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

311.   Plaintiffs paid Defendants thousands of dollars for newly refurbished, tenanted Section 8-approved properties with a guaranteed monthly rental amount and specified annual return, as well as the management thereof and necessary legal services.

312.   Defendants deliberately never delivered said purchase and fraudulently induced Plaintiffs to pay for items and services that were not in fact delivered.

313.   Defendants illegally appropriated converted Plaintiffs funds for Defendants' use and benefit in contravention of Plaintiffs' rights therein.

314.   Plaintiffs repeatedly demanded return and delivery of Plaintiffs' funds from Defendants, but Defendants have refused to deliver the items and services for which Plaintiffs paid and/or refund Plaintiffs' money.  In fact, to add insult to injury, Defendants repeatedly demanded more money from Plaintiffs for "repairs," "legal fees," "management," and so on.

315.   Plaintiffs have suffered damages as a result of Defendants' wrongful conversion.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.   Enter a judgment in Plaintiffs' favor in an amount not less than One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants, including their costs and attorney fees incurred herein;

b.      Award Plaintiffs exemplary/punitive damages against Defendants in an amount of

not less than One Million Dollars ($1,000,000.00) per property purchased by

Plaintiffs from Ponzi Scheme defendants; and

c.      Grant such other relief as this Honorable Court deems just and equitable.


**TENTH CLAIM FOR RELIEF**
**Statutory Conversion [MCL Section 600.2919a]**
**(as to all Defendants)**

316.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

317.    Plaintiffs paid Defendants thousands of dollars for newly refurbished, tenanted

Section 8-approved properties with a guaranteed monthly rental amount and specified annual

return, as well as the management thereof and necessary legal services.

318.     Defendants deliberately never delivered said purchase and fraudulently induced

Plaintiffs to pay for items and services that were not in fact delivered.

319.     Defendants illegally appropriated converted Plaintiffs funds for Defendants' use

and benefit in contravention of Plaintiffs' rights therein.

320.     Plaintiffs repeatedly demanded return and delivery of Plaintiffs' funds from

Defendants, but Defendants have refused to deliver the items and services for which Plaintiffs

paid and/or refund Plaintiffs' money.  In fact, to add insult to injury, Defendants repeatedly

demanded more money from Plaintiffs for "repairs," "legal fees," "management," and so on.

321.    Plaintiffs have suffered damages as a result of Defendants' wrongful conversion.

322.    MCL Section 600.2919a delineates the remedies for conversion:

(1)    A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and attorney fees:

    (a) Another person's stealing or embezzling property or converting property to the other person's own use.

    (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2)    The remedy provided by this section is in addition to any other right or remedy the person my have at law or otherwise.

MCL Section 600.2919a.

323.    Pursuant to MCL Section 600.2919a, Plaintiffs are entitled to damages against Defendants in the amount of three times (3x) the amount of monies they paid to Defendants for the properties, alleged property management, alleged property repair, alleged legal services, and any other monies Plaintiffs paid to Defendants, in addition to Plaintiffs' costs and reasonable attorney fees incurred as a result of Defendants' conversion.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.    Enter a judgment in Plaintiffs' favor in an amount not less than One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants, including their costs and attorney fees incurred herein;

b.    Award Plaintiffs exemplary/punitive damages against Defendants in an amount of not less than One Million Dollars ($1,000,000.00) per property purchased by Plaintiffs from Ponzi Scheme defendants; and

c.   Grant such other relief as this Honorable Court deems just and equitable.

## ELEVENTH CLAIM FOR RELIEF
### Unlawful Trade Practices & Michigan Consumer Protection Act
### [MCL Section 445.101 *et seq.* MCL Section 445.903]
### (as to all Defendants)

324.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

325.    Pursuant to MCL Section 445.101 *et seq.*, Defendants engaged in unlawful trade practices against Plaintiffs.

326.    Pursuant to MCL Section 445.903, Defendants violated the Michigan Consumer Protection Act, Act 331 of 1976, in their dealings and transactions with Plaintiffs.

327.    MCL Section 445.903, Act 331 of 1976, the Michigan Consumer Protection Act, states, as follows:

Sec. 3

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

***

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

***

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

***

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

\*\*\*

(u) Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

\*\*\*

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

\*\*\*

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

MCL Section 445.903, Act 331 of 1976.

328.    In their dealings and transactions with Plaintiffs, Defendants violated all of the

portions of the Michigan Consumer Protection Act cited herein.

329.    Plaintiffs have suffered damages as a result of Defendants unlawful trade

practices and violations of the Michigan Consumer Protection Act.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline

Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover

respectfully request this Honorable Court to grant the following relief:

a.  Enter a judgment in Plaintiffs' favor in an amount not less than One Hundred

Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi

Scheme Defendants, including their costs and attorney fees incurred herein;

b.  Award Plaintiffs exemplary/punitive damages against Defendants in an amount of not

less than One Million Dollars ($1,000,000.00) per property purchased by Plaintiffs

from Ponzi Scheme defendants; and

c.  Grant such other relief as this Honorable Court deems just and equitable.

## TWELFTH CLAIM FOR RELIEF
### Civil Racketeering/RICO (Violations of 18 U.S.C Sections 1341, 1343, 1961, 1962, 1964) (as to all Defendants)

330.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

331.    There were in force and effect at all relevant times criminal statutes of the United

States involving mail and wire fraud, 18 U.S.C. Section 1341 and 18 U.S.C. Section 1343.

332.    Defendants devised and implemented a scheme to defraud and obtain money by

false and fraudulent representations and promises from Plaintiffs and others.

333.    To sustain, advance, and prevent detection of the scheme to defraud, as alleged in

the prior paragraphs herein, Defendants created ghost tenants, fabricated leases, forged

signatures, engaged in phony evictions of non-existent tenants, fabricated and/or forged Section

8 audits, and engaged in other similar fraudulent actions to give the appearance of fully

furbished, tenanted, Section 8 properties with full-paying tenants paying high amounts in

monthly rents, knowing that such appearance was false.

334.  In furtherance  or execution of the scheme to defraud, Defendants caused to be

used, on numerous occasions, the U.S. Postal Service, private or commercial interstate carriers,

interstate wires and telephone lines, in violation of the federal mail and wire fraud statutes, 18

U.S.C. Sections 1341 and 1343, including but not limited to the following:

      a)  mailing and wiring to financial institutions and Plaintiffs false and fraudulent purchase agreements, loan applications, verifications of deposit, lease agreements, and statements of income, as alleged more specifically in the prior paragraphs herein;

      b)  using the telephone lines to disseminate fraudulent information to financial institutions and Plaintiffs, as alleged more specifically in the prior paragraphs herein; and

      c)  transferring by wire or causing to be so transferred funds and other assets of Plaintiffs and other parties directly and indirectly to banks or other financial accounts.

      Such mail and wire fraud includes the following:

| **Date** | **Details of Mail or Wire Fraud** | **Involved Defendants, Plaintiffs** |
| --- | --- | --- |
| 12/5/11 | DHL Shipment from Metro Property Mgt to Said Fadel From Dearborn Heights, MI to Dhahran/Al-Khobar, Saudi Arabia Tracking # 74264591752 | Defs Kathy Messics, Metro Prop Mgt, LLC to Plaintiff Said Fadel |
| April '11 | Phone Call describing fictitious Tenants, fraudulent refurbishments | Defs Ali Beydoun, Sameer Beydoun to Plaintiff Kathryn Llewellyn-Jones |
| Sept '11 | Phone Call claiming fraudulent Section 8 Approval (Forged Section 8 Audit Later Sent to bolster Fraud) | Defendant Ali Beydoun to Plaintiff Kathryn Llewellyn-Jones |
| 08/12/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,561.20 Payment # 2122901778 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 09/01/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $371.20 Payment # 2136471641 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |

| | | |
|---|---|---|
| 10/07/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,341.80 Payment #2161543940 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones& Mark Jones |
| 11/01/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,216.80 Payment #2178329063 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 01/04/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,186.80 Payment #3247771174 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 01/12/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,341.80 Payment #3435991173 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 02/10/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,271.80 Payment #4072531174 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 03/13/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,569.80 Payment #4745571174 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 04/13/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,591.80 Payment #4847351172 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Kathryn Llewellyn-Jones & Mark Jones |
| 05/15/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,341.80 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs |

|  | Payment #4904747590<br>CCD ID:   9200502235 | Kathryn Llewellyn-Jones & Mark Jones |
|---|---|---|
| 09/02/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $713.10 Payment #2136611711 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 10/07/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,679.30 Payment #2161322122 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 11/01/11 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,274.30 Payment #2178394971 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 01/04/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,274.30 Payment #3247731172 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 01/12/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,274.30 Payment #3436051177 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 02/10/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,099.30 Payment #4072531172 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 03/13/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,708.30 Payment #4745511174 CCD ID:   9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 04/13/12 | Bank Deposit of Fraudulent Rental | Defs Metro Property Grp, Metro Property |

|  | | |
|---|---|---|
|  | Amt to JPMorgan Chase Acct# 00000099362xxxx  $1,449.30 Payment #4847331283 CCD ID:  9200502235 | Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 05/17/12 | Bank Deposit of Fraudulent Rental Amt to JPMorgan Chase Acct# 00000099362xxxx  $2,274.30 Payment #4904986453 CCD ID:  9200502235 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiff Caroline Jones |
| 11/21/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $674.165 REF#YIR0-06041 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 11/20/12 | Wire Transfer of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $1,802.58 Transaction #4922492563 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 03/15/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $476.588 REF#YIR0-05557 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 04/19/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $36.689 REF#YIR0-00677 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 05/17/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $317.189 REF#YIR0-05825 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 04/19/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $36.689 REF#YIR0-00677 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |
| 06/17/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $233.039 REF#YIR0-04698 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |

| | | |
|---|---|---|
| 07/17/12 | Bank Deposit of Fraudulent Rental Amt to HSBC Acct# 002-40861x-xxx  $233.039 REF#YIR0-07699 | Defs Metro Property Grp, Metro Property Mgt, Sameer Beydoun, Ali Beydoun, Other Ponzi Scheme Defendants to Plaintiffs Peter Green & Lesley Green |

335.    At all times relevant, Defendants Metro Property Group, LLC, Metro Property Management, LLC, and its other associated and related companies, Global Power Equities, LLC, and Apex Equities, LLC (collectively referred to as the "Metro Property Group Entities") constituted an enterprise.  The individuals and entities listed below also constituted an association-in-fact enterprise (the "Association"), as defined in 18 U.S.C. Section 1961(4).

a)    The Metro Property Group Entities' purpose and function and usual and daily activity was to serve as an entity through which properties would be bought, rented, and/or sold.  Thus, the Metro Property Group Entities engaged in and its affairs affected interstate commerce because, among other things, it used interstate wires to receive monies to fund its activities.

b)    Defendants Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen constitute and constituted the Association.  The Association functioned as a continuing unit with a common purpose and usual and daily activity of buying renting, and selling real estate.  Thus, the Association engaged in and its affairs affected interstate commerce because, among other things, it contracted with out-of-state companies in connection with the real estate transactions and used interstate wires to fund those transactions.  The members of the Association were all perpetrators of the racketeering activity alleged herein.

336.    Defendant Sameer Beydoun is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Beydoun was associated with the enterprises.

337.     Defendant Ali Beydoun is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Beydoun was associated with the enterprises.

338.     Defendant Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Baydoun was associated with the enterprises.

339.     Defendant Baydoun Law Group, PLLC d/b/a The Meridian Law Group is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through its association and membership, Baydoun Law Group, PLLC d/b/a The Meridian Law Group was associated with the enterprises.

340.     Defendant Mike Alaweih is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Alaweih was associated with the enterprises.

341.     Defendant David Makki is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Makki was associated with the enterprises.

342.     Defendant Chris Picciurro is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Picciurro was associated with the enterprises.

343.     Defendant Kathy Messics is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through her association and membership, Messics was associated with the enterprises.

344.     Defendant George Vanderburg is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Vanderburg was associated with the enterprises.

345.     Defendant Allen Brothers Attorneys and Counselors Professional Limited Liability Company is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through its association and membership, Allen Brothers Attorneys and Counselors Professional Limited Liability Company was associated with the enterprises.

346.     Defendant James Allen is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and was a member of the Association.  Through his association and membership, Allen was associated with the enterprises.

347.     Defendant John Allen is a person as that term is defined in 18 U.S.C. Section 1961(3) and was, at all times relevant, associated with the Metro Property Group Entities and

was a member of the Association.  Through his association and membership, Allen was associated with the enterprises.

348.    At all time relevant, from some time in 2011 to date, Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, knowingly conducted, participated in, controlled, manipulated, or directed one or more of the enterprises' affairs through a pattern of racketeering activity consisting of violations of the federal mail and wire fraud statutes, in violation of 18 U.S.C. Section 1962(c) and (d).

349.    Specifically, Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, assisted, facilitated, and implemented the scheme to defraud, as detailed in this Complaint, *supra*.

350.    Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC

d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, all received substantial monetary and other benefits resulting from the scheme to defraud.

351.    Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, knew that the U.S. Postal Service, private or commercial interstate carriers, and interstate wires and telephone lines would be used in furtherance of the scheme to defraud as described herein, in violation of the federal mail and wire fraud statutes, 18 U.S.C. Sections 1341 and 1343.

352.    The uses of mails and wires in furtherance of the scheme to defraud and other illegal activities engaged in by Defendants amounted to continuing criminal activity and thus constituted a pattern of racketeering activity pursuant to 18 U.S.C. Sections 1961(1), in violation of 18 U.S.C.  Section 1962(c).

353.    The uses of the mails and wires as described herein in furtherance of the scheme to defraud was the regular way of conducting the ongoing business of the activities of Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen

Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, and would have continued indefinitely against Plaintiffs has they not learned of the scheme against them and taken action to end it.  The scheme continues against other similarly situated parties who have not learned of the scheme against them and taken action to end it.

354.    Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, conspired to participate in one or more of the enterprises' affairs through a pattern of racketeering activity, specifically:  multiple acts of mail and wire fraud in violation of 18 U.S.C. Sections 1341 and 1343, in violation of 18 U.S.C. Sections 1962.

355.    The predicate acts of mail and wire fraud as described herein constituted a pattern of racketeering activity as defined in 18 U.S.C. Section 1961(5).

356.    Defendants engaged in conduct of an illegal enterprise through a pattern of racketeering activity, resulting in injury to Plaintiffs.  Defendants committed many fraudulent and illegal acts and behavior against Plaintiffs and engaged in mail and wire fraud in the engagement thereof, as codified in 18 U.S.C. Section 1964 *et seq*, the Racketeer Influenced and Corrupt Organizations Act.

357.    Defendants repeatedly made false representations of material fact and material omissions to Plaintiffs and illegally used mail and wire services to communicate those false

representations and material omissions to Plaintiffs in violation of federal mail and wire fraud statutes.

358.   Defendants knew or believed that the false representations of material fact and material omissions they made to Plaintiffs were false or material omissions.

359.   Defendants made the material misrepresentations and omissions with the intent to induce Plaintiffs to rely upon them.

360.   Plaintiffs took many actions in reliance upon Defendants' misrepresentation and omissions.

361.   Plaintiffs suffered injuries and damages as a result of their reliance upon Defendants' misrepresentations and omissions.

362.   Defendants committed predicate acts and used mail and wire services and violated federal mail and wire fraud statutes in the commission of their material misrepresentations and omissions to induce Plaintiffs, upon which plaintiffs relied and took actions, and as a result of which Plaintiffs suffered harm and damages.

363.    Defendants Metro Property Group, LLC, Metro Property Management, LLC, Global Power Equities, LLC, Apex Equities, LLC, Sameer Beydoun, Ali Beydoun, Tarek Mahmoud Baydoun a/k/a Tarek M. Baydoun a/k/a Tarek Beydoun, Baydoun Law Group, PLLC d/b/a The Meridian Law Group, Mike Alaweih, David Makki, Chris Picciurro, Kathy Messics, George Vanderburg, Allen Brothers Attorneys and Counselors Professional Limited Liability Company, James Allen, and John Allen, themselves and/or through their agents, engaged in fraud, aided and abetted fraud, engaged in civil conspiracy and fraudulent misrepresentation about the conduct of themselves and others, upon which Plaintiffs reasonably relied.

364.   As a direct result of the operation of the enterprises through the above-described

pattern of racketeering activity, Plaintiffs were injured in an amount not yet fully determined, but believed to be in excess of One-Million Dollars ($1,000,000.00).

365.   With regard to all claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1962 and 1964, Plaintiffs are entitled to trebled compensatory damages.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

    a.  Find and declare that Defendants violated 18 U.S.C. Sections 1341 and 1343 and 18 U.S.C. Sections 1961, 1962, and 1964 *et seq*, the Racketeer Influenced and Corrupt Organizations Act;

    b.  Enter a judgment in Plaintiffs' favor in an amount not less than Three Hundred Thousand Dollars ($300,000.00)  per property purchased by each Plaintiffs form Ponzi Scheme Defendants (One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants trebled), including their costs and attorney fees incurred herein;

    c.  Award Plaintiffs exemplary/punitive damages against Defendants in an amount of not less than One Million Dollars ($1,000,000.00) per property purchased by Plaintiffs from Ponzi Scheme defendants; and

    d.  Grant such other relief as this Honorable Court deems just and equitable.

### THIRTEENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (as to all Defendants)

365.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

366.    Defendants deliberately and intentionally inflicted emotional distress upon Plaintiffs.

367.    Defendants acted intentionally or recklessly against Plaintiffs.

368.    Defendants' conduct was extreme, outrageous, egregious, and unconscionable.

369.    Defendants' conduct caused Plaintiffs emotional distress and constant mental anguish and despair.

370.    Defendants' acts were the cause of Plaintiffs' emotional distress and constant mental anguish.

371.    As a direct and proximate result of Defendant's outrageous conduct and acts, Plaintiffs suffered and continue to suffer emotional distress and constant mental anguish.

WHEREFORE, Plaintiffs Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request this Honorable Court to grant the following relief:

a.   Find and declare that Defendants engaged in intentional infliction of emotional distress against Plaintiffs;

b.   Enter a judgment in Plaintiffs' favor in an amount not less than One Hundred Thousand Dollars ($100,000.00) per property purchased by Plaintiffs from Ponzi Scheme Defendants, including their costs and attorney fees incurred herein;

c.  Award Plaintiffs exemplary/punitive damages against Defendants in an amount of not less than Five Million Dollars ($5,000,000.00) per property purchased by Plaintiffs from Ponzi Scheme defendants; and

d.  Grant such other relief as this Honorable Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Kathryn Llewellyn-Jones, Mark Llewellyn-Jones, Caroline Jones, Peter Green, Lesley Green, Said Fadel, Warren Grover, and Margaret Joyce Grover respectfully request that this Honorable Court:

(a)  Enter judgment in favor of Plaintiffs and against Defendants, jointly and severally;

(b)  Find and declare that Defendants engaged in fraudulent misrepresentation against Plaintiffs;

(c)  Find and declare that Defendants engaged in fraud in the inducement against Plaintiffs;

(d)  Find and declare that Defendants engaged in breach of contract against Plaintiffs;

(e)  Find and declare that Defendants engaged in breach of implied contract/quasi-contract against Plaintiffs and were unjustly enriched by Plaintiffs;

(f)  Find and declare that Defendants' conduct was such that they were the alter egos of their respective companies, as set forth herein, and that the corporate veil must be pierced;

(g)  Find and declare that Defendant corporate officers and officials engaged in tortious acts against Plaintiffs and caused their respective companies to engage in tortious acts against Plaintiffs which caused Plaintiffs harm, as set forth herein, and that Defendant

corporate officers are personally responsible and liable for said harm and damages caused to Plaintiffs;

(h) Find and declare that Defendants engaged in common law conversion against Plaintiffs;

(i) Find and declare that Defendants engaged in statutory conversion, in violation of MCL Section 600.2919a;

(j) Find and declare that Defendants engaged in unlawful trade practices against Plaintiffs in violation of MCL Section 445.101 *et seq*. and that Defendants violated the Michigan Consumer Protection Act, MCL Section 445.903;

(k) Find and declare that Defendants engaged in civil racketeering and violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sections 1961, 1962, 1964, and 18 U.S.C. Sections  1341, 1343;

(l) Find and declare that Defendants engaged in intentional infliction of emotional distress against Plaintiffs;

(m) Award Plaintiffs all appropriate damages, including nominal, compensatory, and punitive damages, treble damages, attorney fees, costs, and interest against Defendants; and

(n) Grant Plaintiffs such further and other relief as the Court deems appropriate;

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury of all issues triable of right by a jury.


Respectfully submitted,


By: s/Deborah K. Schlussel
Deborah K. Schlussel (P56420)
Law Offices of Debbie Schlussel
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409
WriteDebbie@gmail.com


Dated:  April 17, 2013